The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Anthony L. OWENS, Defendant–Appellant.

No. 01CA1712.

Colorado Court of Appeals, Div. I.

Jan. 29, 2004.

Rehearing Denied April 1, 2004.

Certiorari Denied Aug. 16, 2004.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.

228

Ken Salazar, Attorney General, Melissa D. Allen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

James Grimaldi, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Anthony L. Owens, appeals the judgments of conviction and sentences imposed following jury verdicts finding him guilty of one count of first degree kidnapping, six counts of second degree kidnapping, five counts of aggravated robbery, and two counts of menacing. We affirm in part, reverse in part, and remand with directions.

Defendant's convictions and sentences here arose from three incidents in which three fast-food restaurants were robbed at closing time. Defendant was caught by the police while attempting to flee the scene of the last incident and thereafter was linked to the other two.

Although charges in connection with each incident were separately filed, the trial court consolidated the three cases for trial. A jury found defendant guilty, and he was sentenced, after being adjudicated an habitual offender, to an aggregate term of 760 years imprisonment.

I.

Defendant contends that the trial court erred in consolidating the three cases for trial. We disagree.

A.

Initially, we reject, for the reasons stated in *People v. Gross,* 39 P.3d 1279, 1281–82 (Colo.App.2001), the prosecution's assertion that defendant waived this contention by not renewing his pretrial objection to consolidation.

B.

Whether to consolidate separate cases lies within the trial court's discretion and its determination will not be disturbed on appeal unless that discretion is abused. "Consolidation is permissible if all of the offenses are of the same or similar character or are based on two or more acts or transactions that are connected together or are part of a single scheme and plan." *People v. Gross, supra,* 39 P.3d at 1282.

In determining whether the offenses qualify for consolidation, "it is not essential that the means of committing the other crimes replicate in all respects the manner in which the crime charged was committed." *People v. McKibben,* 862 P.2d 991, 993 (Colo.App.1993)(discussing admissibility of CRE 404(b) other bad acts evidence, in general).

Here, the court found that, although the incidents were not similar in all respects,

they were sufficiently similar to permit the evidence concerning them to be admitted in one consolidated trial. *See generally People v. Rath*, 44 P.3d 1033, 1043 (Colo.2002)(discussing degrees of similarity of other bad acts evidence). Each incident involved the robbery of a fast-food restaurant by a black male, occurred at closing time, and encompassed the seizure of at least one employee. Further, the incidents occurred within ten days of one another and within a thirty-five-block area. Defendant was ultimately identified, in varying degrees of strength, in all three incidents. And a bladed weapon was used in all three incidents, a fact that the trial court found to be of particular significance "in this day and age."

Because we agree that evidence of each offense would have been admissible in separate trials, we conclude that the trial court did not abuse its discretion in consolidating the cases. *See People v. Gross, supra*, 39 P.3d at 1282; *see also People v. Early*, 692 P.2d 1116, 1119 (Colo.App.1984).

### C.

We reject defendant's assertion that, inasmuch as he had confessed to only one incident, it was unfair to try him for all three incidents in one trial. *See United States v. Cox*, 934 F.2d 1114, 1120 (10th Cir.1991)(severance of counts not required because government's evidence was stronger on some counts). Even if, as defendant alleges for the first time on appeal, parts of his confession would have been inadmissible in trials of the other two incidents, a redaction of parts of the confession, not denial of consolidation, would have been the appropriate remedy.

And contrary to defendant's contention, reversal is not required because the trial court failed to sua sponte limit the purposes for which the jury could consider evidence of each incident in relation to the other two. *See Cordova v. People*, 880 P.2d 1216, 1220 (Colo.1994)(no limiting instruction required where evidence of each incident was presented as direct evidence in support of particular counts).

### II.

Defendant contends that the trial court erred in not suppressing on due process grounds certain identification evidence. We disagree.

As pertinent here, a detective presented employees of two of the restaurants with a photo array containing the pictures of six men, including defendant. Defendant's picture was selected as that of (1) the robber by one employee from each of the two restaurants and (2) the person in the array who most looked like the robber by two other employees of one restaurant.

### A.

■ On appeal, defendant asserts that this identification evidence is inadmissible because of impermissible suggestiveness in either the array itself or the manner in which the array was presented to some of the witnesses. We are not persuaded.

■ A defendant is denied due process by an out-of-court identification procedure which is so suggestive that it renders unreliable any resulting identification testimony. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

■ In challenging the admissibility of identification evidence under the Due Process Clause, the defendant bears the burden of showing that the identification procedure, here the use of a photo array, was impermissibly suggestive. If the defendant meets that burden, the evidence is inadmissible unless the prosecution demonstrates that the identification was reliable despite the improper suggestiveness. *Bernal v. People*, 44 P.3d 184, 191 (Colo.2002).

■ Because the resolution of defendant's due process challenge involves a mixed question of fact and law, we give deference to the trial court's findings of historical fact, but may give different weight to those facts and reach a different legal conclusion from the trial court. *See Bernal v. People, supra*, 44 P.3d at 190.

■ A number of factors are relevant in evaluating whether a pretrial identification

procedure is impermissibly suggestive, including the size of any array, the details of the photographs themselves, and the manner of presentation of the array. *Bernal v. People, supra,* 44 P.3d at 191.

■ An array of six photographs, which depicts individuals matched by race, approximate age, facial hair, and a number of other characteristics and which does not include a photograph unique in some manner directly related to an important identification factor, comports with due process. *People v. Borghesi,* 66 P.3d 93, 104 (Colo.2003); *Bernal v. People, supra,* 44 P.3d at 192.

After reviewing the array, we, like the trial court, conclude that there is nothing about it (including any particular look of despondency) to make defendant stand out from the other men. While defendant is shown in a green shirt, nothing in or about his picture suggests that the shirt originated from the department of corrections, as opposed to some more innocuous source, such as hospital attire. Nor were there any uniquely suggestive features that were directly related to an important identification factor.

Regarding the manner in which the array was presented, we reject defendant's assertion that impermissible suggestiveness resulted from the detective's request of two witnesses to see whether they could identify the perpetrator, or the person who looked most like the perpetrator, from the array. As noted by the division in *People v. Gonzales,* 631 P.2d 1170, 1171 (Colo.App.1981)(discussing a police directive to a witness to concentrate, when viewing a photo array, on things that could not be changed about a person's features), "[T]he comment ... was neutral as to all photographs in the display and did not suggest that any particular photograph should be selected." *Cf. People v. Walford,* 716 P.2d 137, 140 (Colo.App.1985)("An otherwise properly conducted lineup is not constitutionally infirm where a witness knows only that a suspect has been arrested and has been included in the lineup.").

### B.

■ Defendant also asserts that due process requires exclusion of one witness's identification evidence because, while viewing the array, an individual called out to the witness not to snitch on her friends. We are not persuaded.

In *People v. Hardiway,* 874 P.2d 425, 429 (Colo.App.1993), a division of this court declined to resolve whether a defendant was required to show state action as part of a due process challenge to the admissibility of identification evidence.

Some courts hold that a showing of state action is not necessary based on the view that, in this context, due process protects an accused not from police misconduct but from unreliable evidence per se. *See Dunnigan v. Keane,* 137 F.3d 117, 128 (2d Cir.1998); *United States v. Bouthot,* 878 F.2d 1506, 1515–16 (1st Cir.1989); *Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir.1986); *People v. Blackman,* 110 A.D.2d 596, 598, 488 N.Y.S.2d 395, 397 (1985).

The majority of jurisdictions that have considered the issue, however, has determined otherwise. *See State v. Reid,* 91 S.W.3d 247, 272 (Tenn.2002). Under this line of authority, a showing of state action is required because due process protects an accused only from the admission of unreliable evidence caused by governmental action. *See State v. Reid, supra; see also United States v. Zeiler,* 470 F.2d 717, 720 (3d Cir.1972); *Semple v. State,* 271 Ga. 416, 519 S.E.2d 912, 914 (1999); *Harris v. State,* 619 N.E.2d 577, 581 (Ind.1993); *Wilson v. Commonwealth,* 695 S.W.2d 854, 857 (Ky.1985); *Tidwell v. State,* 784 S.W.2d 645, 647 (Mo.Ct.App.1990); *State v. Brown,* 38 Ohio St.3d 305, 528 N.E.2d 523, 532 (1988); *State v. Pailon,* 590 A.2d 858, 863 (R.I.1991).

We find this latter line of authority more persuasive. We recognize that, in *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the United States Supreme Court emphasized that where pretrial identification procedures are challenged on due process grounds, reliability is the linchpin of analysis. In so doing, however, "the Court left undisturbed that fundamental principle which holds that pretrial identification or recognition of an accused ... in the absence of participation by

the police or prosecution does not bring such identification within the ambit of the due process principles." *Sheffield v. United States*, 397 A.2d 963, 966 (D.C.1979).

In *Colorado v. Connelly*, 479 U.S. 157, 165, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986), the United States Supreme Court considered the admissibility under a due process analysis of a statement made by an accused while in a psychotic state and not in response to any police conduct. There, the Court held that, "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connelly, supra,* 479 U.S. at 164, 107 S.Ct. at 520.

> A statement rendered by one in the condition of respondent might be proved to be quite unreliable, but this is a matter to be governed by the evidentiary laws of the forum, and not by the Due Process Clause of the Fourteenth Amendment. "The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence, whether true or false."

*Colorado v. Connelly, supra,* 479 U.S. at 167, 107 S.Ct. at 521–22 (citation omitted; quoting *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941)).

Further, and of particular import to the outcome in this case, the Court observed that "[t]he most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." *Colorado v. Connelly, supra,* 479 U.S. at 166, 107 S.Ct. at 521.

Here, defendant did not allege that the individual who interjected the comment acted as an agent of the police or that the police endorsed or condoned her comment in any way. Thus, due process would not bar admission of evidence of the witness's ensuing identification.

This is particularly true here, because any unreliability would have been produced not by the influence of any subconscious factors on the mind of a witness, but by a conscious choice by the witness to misidentify the perpetrator. If the witness admitted a conscious misidentification, the evidence could be excluded under CRE 403 as unfairly prejudicial or misleading. Otherwise, any unreliability could be exposed through cross-examination and impeachment.

## III.

■ Defendant contends that the trial court erred in admitting evidence of an involuntary confession. We disagree.

■ To render a statement involuntary, coercive governmental conduct must play a significant role in inducing a confession or inculpatory statement. *People v. Valdez,* 969 P.2d 208, 211 (Colo.1998); *see also People v. Dracon,* 884 P.2d 712, 719 (Colo. 1994). "In essence, the question at issue is whether the individual's will has been overborne." *People v. Valdez, supra,* 969 P.2d at 211.

■ Whether an individual's will has been overborne depends upon the totality of the circumstances surrounding the statements. *See People v. Valdez, supra* (listing several relevant factors for consideration); *see also People v. Klausner,* 74 P.3d 421, 425 (Colo.App.2003).

■ In reviewing a trial court's ruling on a motion to suppress, we defer to those factual findings that are supported by competent evidence in the record, but review de novo the ultimate legal determination of whether a statement is voluntary. *See People v. Cardenas,* 25 P.3d 1258, 1264 (Colo. App.2000).

Here, defendant asserts that his confession was the product of direct or implied agreements and potentially improper influences because the police misled him to believe that he would receive lenient treatment in exchange for information about other criminals. After considering testimony concerning, and a transcript and a videotape of, the officer's custodial interrogation of defendant, however, the trial court found, with record support, that (1) defendant had been properly advised of and waived his *Miranda* rights, (2) the advisement was proper and signed in two places by defendant, (3) it was defendant who

volunteered to "work off" his arrest by assisting the police in other cases, and (4) the police made no promises or representations that a deal would be reached.

We conclude that the circumstances reveal a situation where defendant may have hoped for, but was not promised, leniency. Accordingly, we conclude that his will was not overborne by coercive police conduct, and thus his confession was admissible.

We also reject defendant's related contention that the court erred in allowing jurors unsupervised access to his videotaped confession during deliberations. *See People v. Ferrero,* 874 P.2d 468, 472–73 (Colo.App.1993).

## IV.

■ Next, defendant contends that the trial court erred in precluding him from presenting alternative suspect evidence. We disagree.

■ A defendant may introduce evidence implicating another person in the crime charged. *People v. Flowers,* 644 P.2d 916, 918 (Colo.1982)("Clearly, a defendant may prove his innocence by establishing the guilt of another."); *People v. Perez,* 972 P.2d 1072, 1074 (Colo.App.1998). The culpability of another person is usually inferred from evidence of such person's motive or opportunity to commit the crime. *See People v. Mulligan,* 193 Colo. 509, 518, 568 P.2d 449, 456 (1977); *People in Interest of R.L.,* 660 P.2d 26, 28 (Colo.App.1983).

To present evidence of opportunity or motive, a defendant must first establish that the other person committed some act directly connecting that person with the crime charged. *People v. Mulligan, supra,* 193 Colo. at 518, 568 P.2d at 456; *People v. Perez, supra,* 972 P.2d at 1074.

Here, defendant sought to admit evidence that (1) before one of the robberies, a black male sat in the restaurant not eating or ordering food, but waiting for a companion, a restaurant employee; (2) the employee asked his manager about the extent of the restaurant's profit that evening; and (3) the manager reported that both men acted suspiciously and disappeared about an hour and a half before the robbery.

These allegations raise only speculation and not a direct connection of either the black male or his companion to the crime. Thus, we conclude that the trial court properly acted within its discretion in excluding the proffered evidence. *See People in Interest of R.L., supra,* 660 P.2d at 28 (purpose of rule is to avoid prejudice from jury speculation); *People v. Armstrong,* 704 P.2d 877, 879 (Colo.App.1985)(evidence that, fifty minutes before robbery, two unidentified black men were seen in restaurant's parking lot, but left the parking lot within ten minutes, properly excluded).

## V.

Defendant contends that there is insufficient evidence of asportation to support his convictions for second degree kidnapping under § 18–3–302(1), C.R.S.2003. We disagree.

In *People v. Harlan,* 8 P.3d 448, 476 (Colo. 2000), the supreme court recognized that the asportation element of second degree kidnapping is the seizing and carrying of a person from one place to another. This element, the court indicated, was satisfied when "the defendant moved [a] victim from one place to another." *People v. Harlan, supra,* 8 P.3d at 476–77; *see also People v. Metcalf,* 926 P.2d 133, 137 (Colo.App.1996)("the word 'seize' encompasses a mere taking").

■ The movement of a victim necessary to sustain a second degree kidnapping conviction—from one place to another—need not be substantial and may be incidental to another crime. *People v. Bell,* 809 P.2d 1026, 1033 (Colo.App.1990). Where, as here, the prosecution relies on insubstantial movement, a showing that the movement substantially increased the risk of harm to a victim suffices to support the conviction. *See People v. Fuller,* 791 P.2d 702, 706 (Colo.1990).

■ Our role in reviewing the sufficiency of the evidence is to determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the·accused's guilt beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945, 950 (Colo.1988). In making

this assessment, we give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *People v. Foster,* 971 P.2d 1082, 1084 (Colo. App.1998).

## A.

Contrary to defendant's argument, one restaurant manager was seized and carried when he stepped outside his office in response to an employee's scream, heard defendant whisper, "call your manager," and followed defendant, holding the employee at knifepoint, back into his office. As pertinent here, the manager's movements were caused by defendant's actions. *See People v. Harlan, supra,* 8 P.3d at 477 (equating seizing and carrying with moving the victim); *People v. Maass,* 981 P.2d 177, 185 (Colo.App. 1998)(a person may be "seized" through trickery); *People v. Metcalf, supra,* 926 P.2d at 137 (a person may be "seized" by means other than the application of physical force or express threats).

Similarly, although the testimony is sparse, the record supports the inference that a second victim from that incident and two victims from another incident were also seized and carried, when (1) in the first instance, the victim was called by another victim to come from the grill area to defendant, and the victim ended up in the office with the knife-wielding defendant, *see Coleman v. State,* 264 Ind. 64, 339 N.E.2d 51, 54–55 (1975)(asportation element satisfied when, out of fear for self or others, victim volunteers to go with kidnapper); and (2) in the second instance, both victims were ordered back into the office from the store entrance, after one victim refused to leave the other. *Cf. People v. Abbott,* 690 P.2d 1263, 1270 n. 4 (Colo.1984)(citing *Coleman, supra;* manager suggested move out of fear of harm to himself and coworkers).

## B.

Defendant also asserts that there was insufficient evidence that the last two victims mentioned above, as well as two other victims from the third incident, were moved from one place to another. We disagree.

The record reflects that the first two victims were taken at knifepoint from the restaurant entrance, where they could be seen by passersby, back into the office, where they were threatened with death and where they were no longer visible to members of the public. Similarly, the other two victims were walked back to the office, one was threatened with death, and they were both directed into a bathroom and told not to leave for ten minutes.

In each case, the movement can be said to have substantially increased the risk of harm to the victims. *See Yescas v. People,* 197 Colo. 379, 381, 593 P.2d 358, 360 (1979)("The nature of the crime of kidnapping generally entails an effort to seek seclusion."); *People v. Ridenour,* 878 P.2d 23, 26 (Colo.App.1994)(movement of victim from public restroom to the site of an armed robbery in a small, fully enclosed office, where victim was warned of retribution if he called police, was "more than sufficient evidence to establish movement that substantially increases the risk of harm to the victim"); *People v. Huggins,* 825 P.2d 1024, 1026 (Colo.App.1991)(evidence of asportation sufficient where defendant forced victim from an office to a small enclosed bathroom about ten steps away; court compared place where victim was found, which offered two means of escape and was easily accessible to other employees, with place to which victim was taken, which afforded diminished exposure to others and no practical means of escape).

Consequently, we determine that the evidence was sufficient to sustain the conclusion that these victims were moved from one place to another, and thus, sufficient to sustain defendant's convictions for second degree kidnapping.

## VI.

Defendant contends that reversal of his second degree kidnapping convictions is required because of instructional error. We agree.

The court instructed the jury that, to convict defendant of second degree kidnapping, it had to find, among other things, that he

"seized and carried another person from one place to another."

The court initially read an instruction defining the term "seized and carried" as "any movement, however short in distance that results in a substantial increase and a[sic] risk of harm to the victim." On its own motion, and over defendant's objection, however, the court orally informed the jury that the law had changed and, consequently, that the term had to be redefined as "any movement, however, short, period." Thereafter, the court provided the jury with a written instruction defining the term "seized and carried" as "any movement, however short in distance."

 The seizing and carrying of a person from one place to another is the basic asportation element of kidnapping. *See People v. Harlan, supra,* 8 P.3d at 476 (discussing second degree kidnapping). In many instances, there will be no question about whether a victim has been moved from one place to another. *See People v. Harlan, supra,* 8 P.3d at 477. However, where it is unclear, asportation may be established by proof that the defendant's movement of the victim substantially increased the risk of harm to the victim. *See People v. Harlan, supra; see also Apodaca v. People,* 712 P.2d 467, 475 (Colo.1985)(movement from one place to another "is clearly satisfied when the movement itself, although short in distance, results in a demonstrable increase in risk of harm to the victim"); *People v. Huggins, supra,* 825 P.2d at 1026.

As clarified in *Harlan,* a substantial increase in the risk of harm is not a material element of the crime upon which a jury must be instructed. It is, instead, only "a factual circumstance reviewing courts consider in some cases to determine whether there is sufficient evidence to prove that the defendant moved the victim from one place to another." *People v. Harlan, supra,* 8 P.3d at 476.

Thus viewed, the court's ultimate definition of the term "seized and carried" was not erroneous. The definition comprised but one of two components of the asportation element, and it was the other component ("from one place to another") to which the "substan-

tially increased risk of harm" principle pertained, and for which no instruction was necessary. *See People v. Harlan, supra; cf. Richardson v. People,* 25 P.3d 54, 58–59 (Colo.2001)(jury need not be given usable quantity instruction in drug possession case, because usable quantity is not an element of crime).

However, the court had previously instructed the jury on the meaning of the term "seized and carried" in a manner which explicitly injected the increased risk of harm principle into the case. *See People v. Ridenour, supra,* 878 P.2d at 25 (referencing the same instruction).

 A court has the duty to correct erroneous instructions. *People v. Bastin,* 937 P.2d 761, 764 (Colo.App.1996). However, instructional error may result if the court's instructions create a reasonable possibility that the jury would be misled in reaching a verdict. *See People v. Williams,* 23 P.3d 1229, 1232 (Colo.App.2000).

Here, we conclude that instructional error occurred as a result of the manner in which the trial court retracted its initial definition of "seized and carried." By withdrawing the reference to increased risk of harm because of a purported change in the law, the trial court may have caused the jury erroneously to believe that (1) increased risk of harm is no longer of *any* relevance to a second degree kidnapping charge and (2) any movement, however short, would in and of itself support a conviction for second degree kidnapping.

The situation was exacerbated by a comment made by the prosecution during closing argument. There, the prosecution remarked that "seized and carried … from one place to another" could be satisfied by movement of a foot or two in distance. *Cf. People v. Garcia,* 28 P.3d 340, 346 (Colo.2001)(errors in instructions exacerbated by prosecution's misleading closing argument).

The circumstances here created the very real possibility that the manner in which the court instructed the jury effectively reduced the prosecution's burden of proof and permitted the jury to find the asportation element

of second degree kidnapping based on legally insufficient grounds. *See Evans v. People*, 706 P.2d 795, 800–01 (Colo.1985).

■ While, as already discussed, there was sufficient evidence to sustain a finding of asportation, nonetheless the jury may have made that finding because it had been left with an incorrect impression of the law. Further, because the asportation element of second degree kidnapping was contested here, we cannot find harmless the error engendered by the manner in which the court altered its definition of "seized and carried" before the jury. *See People v. Kanan*, 186 Colo. 255, 259, 526 P.2d 1339, 1341 (1974)("Prejudice to the defendant is inevitable when the court instructs the jury in such a way as to reduce the prosecution's obligation to prove each element of its case beyond a reasonable doubt."); *see also People v. Vanrees*, 80 P.3d 840, 843–44 (Colo. App.2003)(*cert. granted* Dec. 8, 2003)(court's supplemental instruction required reversal because it could have precluded the jury from considering defendant's mental slowness and low mental capacity in determining whether he had acted knowingly).

Accordingly, defendant's convictions for second degree kidnapping must be reversed.

## VII.

■ Defendant contends that his conviction for first degree kidnapping must be vacated because of insufficient evidence. We agree.

■ "For first-degree kidnapping, the prosecution must prove, in addition to movement, that the intent of the defendant is to force the victim [or another] to make a concession or give up a thing of value in order to secure [the victim's] release." *People v. Bridges*, 199 Colo. 520, 527, 612 P.2d 1110, 1116 (1980). To convict an individual of first degree kidnapping, however, the movement of a victim must be more than incidental to the commission of some other underlying offense. *Apodaca v. People, supra*, 712 P.2d at 475.

In *Bridges*, the defendant grabbed the victim at a school parking lot, dragged her to the nearby schoolyard, and, when she tried to escape, hit her and dragged her to another area of the schoolyard. The court reversed the conviction for first degree kidnapping, concluding that the jury had no basis to find the movements "substantially increased the risk of harm to which the victim was already subjected" and that the "movement of the victim had no other purpose or effect beyond robbery and sexual assault." *People v. Bridges, supra*, 199 Colo. at 528, 612 P.2d at 1116–17.

Similarly here, although defendant forced the victim into the manager's office at knifepoint and ordered the manager to retrieve the cash from the safe to secure the victim's release, the movement of the victim had no other purpose or effect beyond robbery. The victim was detained only briefly and moved only a short distance, with no change in environmental factors, and the commission of the robbery and movement of the victim were virtually simultaneous. Under the circumstances, we conclude that there was insufficient evidence to support a separate conviction for first degree kidnapping. *See People v. Bridges, supra*, 199 Colo. at 529, 612 P.2d at 1117; *cf. People v. Morgan*, 637 P.2d 338, 340, 346 (Colo.1981)(sufficient evidence where defendant took victim from her home, drove her to a deserted construction site, and then sexually assaulted her).

Under the analysis discussed in part V above, however, the evidence was sufficient to support a conviction of the lesser included offense of second degree kidnapping. Because of the instructional error identified in part VI above, however, we must remand for a new trial on a charge of second degree kidnapping rather than simply for entry of judgment thereon. *Cf. People v. Naranjo*, 200 Colo. 1, 5, 612 P.2d 1099, 1102 (1980).

## VIII.

■ Defendant contends that the trial court erred in instructing the jury regarding the several aggravated robbery counts. Specifically, defendant asserts that the court's instruction allowed the jury to arrive at (1) a verdict on grounds different from those al-

leged in the information and (2) a nonunanimous verdict. We find no basis for reversal.

Defendant was charged with several counts of aggravated robbery, each count naming a different employee-victim. The court instructed the jury that the elements of aggravated robbery included "knowingly [taking] anything of value from the person or presence of another ... and ... knowingly put[ting] the person robbed, or any other person, in reasonable fear of death or bodily injury." The verdict forms stated, in pertinent part, "We, the jury, find the Defendant ... GUILTY of ... Aggravated Robbery against [the name of a particular employee victim]."

Defendant argues that the jury could have determined that the victim named in the verdict forms was either (1) the person robbed or (2) a person who was not robbed but was placed in reasonable fear of death or bodily injury. Defendant also argues that nothing in the instructions or verdict forms required the jury to unanimously agree on (1) whether the person named in the verdict form was the victim of the robbery or of the attendant menacing, or both; or (2) if the person named were not the victim of both the robbery and attendant menacing, the identity of that other victim.

Because defendant did not object, much less object on these grounds, to the instruction or verdict forms, reversal is not warranted in the absence of plain error. *See People v. Garcia, supra,* 28 P.3d at 344.

We perceive no plain error here. Only the most hypertechnical argument would support defendant's assertions. And when viewed in light of the parties' arguments in the case, we conclude that a reasonable jury would have understood that the persons named in the jury verdicts were those who had been allegedly robbed, rather than otherwise placed in danger.

IX.

We reject defendant's contention that his aggravated robbery and menacing convictions must be reversed because of cumulative error. *See People v. Fears,* 962 P.2d 272, 285 (Colo.App.1997)("Since we found no error

that substantially prejudiced the defendant's right to a fair trial, there is no error to compound.").

X.

Likewise, we reject defendant's contention that his habitual criminal adjudication must be reversed because the trial court applied the wrong legal standards when it assessed his proffered justifications for belatedly challenging several prior convictions. *See People v. Mershon,* 874 P.2d 1025, 1036–37 (Colo.1994)(rejecting claim that defendant had no present need to attack his prior convictions until charged as an habitual criminal); *People v. Vigil,* 955 P.2d 589, 591–92 (Colo.App.1997)(defendant's indigence, ignorance of the law, and lack of legal assistance did not constitute justifiable excuse or excusable neglect).

Nor, under the circumstances presented here, are we persuaded that defendant's habitual criminal adjudication is invalid because two predicate felony convictions, which resulted from guilty pleas entered the same day, were not shown to be based upon charges separately brought and tried and arising out of separate and distinct criminal episodes. *See* § 18–1.3–801(2), C.R.S.2003; *Gimmy v. People,* 645 P.2d 262, 267 (Colo. 1982); *cf. People v. Jones,* 967 P.2d 166, 170 (Colo.App.1997)(under the record, it was plausible to believe that the two burglaries may have been in the same neighborhood within minutes of one another; if so, they would have been subject to mandatory joinder as part of a single crime spree).

And, contrary to defendant's argument, the trial court did not lack jurisdiction, because of a defective information, to accept the guilty plea underlying one predicate conviction. *See People v. Williams,* 984 P.2d 56, 60–61 (Colo.1999) (information is generally sufficient if it sets forth offense in the words of the statute); *People v. Russell,* 36 P.3d 92, 96 (Colo.App.2001)("When, as here, the ulterior crime is stated, and statutory references for criminal attempt and the ulterior crime are provided, the omission of the attempt culpability is merely an error in form, not of substance.").

Accordingly, the judgments of conviction and sentences for first and second degree kidnapping are reversed, and the case is remanded for a new trial on those counts, consistent with the views expressed in this opinion. The judgments of conviction and sentences for aggravated robbery and menacing are affirmed.

Chief Judge DAVIDSON and Judge LOEB concur.