The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

**Jerrell Leron ROGERS, Defendant–Appellant.**

No. 05CA2706.

Colorado Court of Appeals, Div. III.

May 29, 2008.

Rehearing Denied July 3, 2008.

Certiorari Denied Oct. 14, 2008.

John W. Suthers, Attorney General, Jennifer A. Berman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Paul Grant, Englewood, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

Defendant, Jerrell Leron Rogers, appeals the judgment of conviction entered on jury verdicts finding him guilty of unlawful sexual contact, second degree assault, first degree aggravated motor vehicle theft, theft, and second degree kidnapping. We affirm and remand for correction of the mittimus.

## I. Background

In July 2003, defendant came to his friend's apartment, where his friend's girlfriend (victim) was alone with her infant daughter. Defendant attacked the victim, causing her severe injuries.

Several days later defendant was arrested in Texas while driving the victim's truck. He was subsequently charged with criminal attempt to commit murder in the second degree, sexual assault, second degree assault, first degree aggravated motor vehicle theft,

two counts of second degree kidnapping, and a crime of violence sentence enhancer.

## II. Reinstatement of Charges

■ Defendant first argues that the trial court lost jurisdiction when it dismissed the charges as a condition of a plea agreement from which he was later allowed to withdraw. We are not persuaded.

Defendant was charged with seven substantive offenses and one sentence enhancement count.

In August 2004, defendant entered into an agreement which called for him to plead guilty to four added charges in exchange for dismissal of the eight original counts. The court accepted the disposition, dismissed the eight original counts, and set the matter for sentencing.

In October 2004, prior to sentencing, the trial court allowed defendant to withdraw his guilty pleas, pursuant to Crim. P. 32(d), based on allegations that the pleas were not voluntary.

In August 2005, the case proceeded to trial on the seven original charges and the single sentence enhancement count that had been filed prior to the vacated disposition. The jury was not instructed concerning any of the four charges that had been added as part of the vacated disposition. Defendant was convicted as set forth above.

On appeal, defendant argues that the original charges remained dismissed after he withdrew his guilty pleas. We disagree.

Under the terms of the vacated plea agreement, the dismissal of the original charges was not unconditional. *See St. James v. People*, 948 P.2d 1028, 1031 (Colo.1997) (the interpretation of a party's obligation under a plea agreement is a question of law, which we review de novo). Rather, the prosecution's motion to dismiss the original charges was implicitly conditioned on defendant's fulfillment of his obligations under the agreement: (1) pleading guilty to the added charges; and (2) proceeding to sentencing on those pleas. Because defendant withdrew his guilty pleas prior to sentencing, the second condition was never satisfied.

■ It is well established that when a defendant is permitted to withdraw a guilty plea that was entered as part of a disposition involving the dismissal of other charges, he or she returns to the pre-plea status and is subject to trial on the original charges. *See Keller v. People*, 29 P.3d 290, 296 (Colo.2000) ("the prosecution must be permitted to reinitiate criminal proceedings against defendants whose convictions have been vacated as a result of a constitutionally deficient advisement"; "[a] defendant in this position accordingly returns to the status quo ante upon withdrawal of her involuntary plea and may be charged anew"); *People v. Mason*, 176 Colo. 544, 546, 491 P.2d 1383, 1384 (1971) ("vacation of the [guilty] plea results in an abrogation of the bargain, and we therefore see no impediment to the reinstatement of the charges dismissed as a result of the bargain").

Although we acknowledge that cases such as *Keller* and *Mason* speak in terms of reinitiating the proceedings or reinstating the charges, we are unaware of any case, rule, or statute requiring that the return to the status quo ante be accomplished by means of a formal motion. Accordingly, we conclude the conditional dismissal of the original charges did not deprive the court of jurisdiction because, upon the failure of the condition underlying the order of dismissal, that order became a nullity.

■ In reaching this conclusion, we note that defendant does not allege that the absence of a formal motion to reinstate the charges misled him with respect to the charges that he would face at trial or otherwise prejudiced his ability to mount a defense (nor does he claim that he will be unable to rely on the original charging documents as a bar to reprosecution pursuant to double jeopardy principles). *See generally People v. Pollard*, 3 P.3d 473, 477 (Colo.App. 2000) ("An information serves two vital purposes: (1) it provides the defendant with notice of the offense charged, as well as the factual circumstances surrounding the offense, so that the defendant can adequately defend himself or herself, and (2) it protects the defendant from further prosecution for the same offense."). To the contrary, the record reflects that, after defendant withdrew his guilty pleas to the added charges,

he filed a motion under the rape shield statute in which he specifically acknowledged that he was facing trial on the sexual assault charge set forth in the original information (without making reference to the *attempted* sexual assault charge that had been added as part of the vacated disposition). Under these circumstances, we also conclude that defendant did not suffer any prejudice. *See United States v. Bounds*, 985 F.2d 188, 191–92 (5th Cir.1993) (government's failure to either reindict defendant or move for reinstatement of dismissed charges after judgment dismissing two of four counts pursuant to plea bargain was reversed on appeal was harmless error where defendant knew that government intended to try him on all four counts at trial), *abrogated on other grounds by Edwards v. United States*, 523 U.S. 511, 513–14, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998).

## III. Asportation Element

Defendant argues that the evidence is insufficient to support the jury's finding that the prosecution proved the asportation element of second degree kidnapping. In a related claim, defendant argues that the trial court's supplemental instruction defining the term "seized and carried" constituted plain error. We reject both contentions.

### A. Sufficiency of the Evidence

"Any person who knowingly seizes and carries any person from one place to another, without his consent and without lawful justification, commits second degree kidnapping." § 18–3–302(1), C.R.S.2007.

In *People v. Harlan*, 8 P.3d 448, 476 (Colo.2000), the supreme court recognized that the asportation element of second degree kidnapping is the seizing and carrying of a person from one place to another. This element, the court indicated, was satisfied when "the defendant moved [a] victim from one place to another." *People v. Harlan, supra*, 8 P.3d at 476–77; *see also People v. Metcalf*, 926 P.2d 133, 137 (Colo. App.1996) ("the word 'seize' encompasses a mere taking").

The movement of a victim necessary to sustain a second degree kidnapping conviction—from one place to another—need not be substantial and may be incidental to another crime. *People v. Bell*, 809 P.2d 1026, 1033 (Colo.App.1990). Where ... the prosecution relies on insubstantial movement, a showing that the movement substantially increased the risk of harm to a victim suffices to support the conviction. *See People v. Fuller*, 791 P.2d 702, 706 (Colo.1990).

*People v. Owens*, 97 P.3d 227, 235 (Colo.App. 2004).

■ In assessing the sufficiency of the evidence supporting a guilty verdict, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *Kogan v. People*, 756 P.2d 945, 950 (Colo.1988), *abrogated on other grounds by Erickson v. People*, 951 P.2d 919, 923 (Colo.1998).

■ Here, the evidence, when viewed according to the foregoing standards, establishes the following facts.

The victim was asleep in the living room of her boyfriend's apartment when defendant—a friend of her boyfriend—awakened her by grabbing her throat. As the victim struggled backward toward the dining room, defendant punched her in the face with a closed fist and stomped on her throat with a shod foot. Defendant lifted the victim to her feet by her throat and pushed her through a hallway to a bedroom—an area of the apartment that was farther away from the front door and a door to the balcony. As the victim struggled to resist, defendant threw her against the bedroom wall. The victim struck her head and lost consciousness.

When the victim regained consciousness, she discovered that she was lying on her back in the hallway. Her pajama bottoms and underwear had been removed, and defendant was on top of her moving himself back and forth as if engaged in intercourse (the victim testified that, because she was in pain and distress during the attack, she was unable to state with certainty whether pen-

etration had occurred). After defendant lifted himself off of the victim, he pulled up his pants and left the apartment.

Defendant soon returned to the apartment and gathered numerous items belonging to the victim, including the keys to her truck. Two days later, defendant was apprehended driving the victim's truck in Texas.

As a result of the attack, the victim sustained a laceration to her liver and damage to her vocal chords.

We need not address defendant's contention that the movement of the victim from the dining room to the bedroom was insubstantial, because we are satisfied that this movement to a place from which it was more difficult to escape substantially increased the risk of harm to the victim. Likewise, by moving the victim from the bedroom to the hallway (an area of the apartment without any windows), defendant subjected the victim to a substantially greater risk of harm. *See Owens*, 97 P.3d at 236 (collecting kidnapping cases holding that a victim is subjected to a substantially increased risk of harm if moved to an area that is secluded, less public, or more difficult from which to escape).

### B. Supplemental Instruction

■ Whether additional written jury instructions must be given which properly state the law and fairly and adequately cover issues presented is a matter committed to the sound discretion of the trial court. *People v. Gilbert*, 12 P.3d 331, 338 (Colo.App.2000). The trial court's exercise of discretion will not constitute reversible error absent manifest prejudice or a clear showing of abuse of discretion. *People v. Burke*, 937 P.2d 886, 890 (Colo.App.1996). *People v. Renfro*, 117 P.3d 43, 48 (Colo.App. 2004).

Here, the trial court provided the jury with an elemental instruction defining the offense of second degree kidnapping that tracked the language of section 18–3–302(1). That instruction is not at issue.

■ In addition, the court instructed the jury that, as used in the elemental instruction, " 'Seized and Carried' means any movement, however short in distance."

Because defendant did not object to the definitional instruction in the trial court, we review his claim pursuant to the plain error standard. *People v. Miller*, 113 P.3d 743, 750 (Colo.2005).

■ Plain error is error that is obvious and substantial. It exists when, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.* at 749; *Moore v. People*, 925 P.2d 264, 268–69 (Colo.1996).

In *Owens*, 97 P.3d at 237, a division of this court analyzed an identical instruction defining the term "seized and carried" and concluded that it was a correct statement of the law pertaining to kidnapping:

As clarified in *Harlan*, a substantial increase in the risk of harm is not a material element of the crime upon which a jury must be instructed. It is, instead, only "a factual circumstance reviewing courts consider in some cases to determine whether there is sufficient evidence to prove that the defendant moved the victim from one place to another." *People v. Harlan, supra*, 8 P.3d at 476.

Thus viewed, the court's . . . definition of the term "seized and carried" was not erroneous. The definition comprised but one of two components of the asportation element, and it was the other component ("from one place to another") to which the "substantially increased risk of harm" principle pertained, and for which no instruction was necessary. *See People v. Harlan, supra; cf. Richardson v. People*, 25 P.3d 54, 58–59 (Colo.2001) (jury need not be given usable quantity instruction in drug possession case, because usable quantity is not an element of crime).

We are persuaded by this analysis and elect to follow it here, notwithstanding the fact that the division in *Owens* reversed the defendant's conviction because, in an instruction that the trial court provided to the jury before submitting the instruction set forth above, the court had included language indicating that the prosecution was required to prove that the slight movement of the victim

resulted in a "substantially increased risk of harm." *See* 97 P.3d at 237 ("By withdrawing the reference to increased risk of harm because of a purported change in the law, the trial court may have caused the jury erroneously to believe that (1) increased risk of harm is no longer of any relevance to a second degree kidnapping charge and (2) any movement, however short, would in and of itself support a conviction for second degree kidnapping."). Because the jury in this case was never instructed regarding the "substantially increased risk of harm" principle, we have no reason to believe the jury was misled by the absence of that principle from the court's supplemental instruction defining the term "seized and carried."

■■■ Notwithstanding *Owens*, defendant argues that the trial court erred in defining "seized and carried" because "courts should not define for the jury words of common usage and ordinary meaning." An analogous argument concerning the term "consent" was raised by the defendant and rejected by the division in *People v. Pahlavan*, 83 P.3d 1138, 1141 (Colo.App.2003). Like the division in *Pahlavan*, we conclude that the phrase "seized and carried" has a special meaning in the context of kidnapping and is a statutory term of art that may be defined by the court for the jury. *Cf. id.* at 1141–42 ("consent" in the context of sexual assault has specialized meaning, and court should answer jury question seeking clarification of terms of art). Thus, the trial court did not abuse its discretion in providing the supplemental instruction to the jury.

Nor are we persuaded by defendant's suggestion that the prosecutor misled the jury by relying on the court's supplemental instruction as a basis for arguing that defendant committed a kidnapping when he moved the victim from where "she was standing" to the bedroom wall (a statement to which defendant did not object). It is not clear to us whether the prosecutor was referring to the minimal movement of the victim from one side of the bedroom to the other (as defendant asserts), or to the more substantial movement of the victim from the dining room (where, according to the victim, she "was on [her] feet") to the bedroom. However, because the prosecutor characterized the movement of the victim from the bedroom to the

hallway as a kidnapping without also explicitly arguing that a kidnapping occurred when defendant moved the victim from the dining room to the bedroom, it is more probable that the above-quoted remark was a reference to the latter conduct (conduct which we have already concluded is sufficient to support the jury's finding with respect to the issue of asportation). In any event, the ambiguity of the prosecutor's statement undermines defendant's contention that the remark "most likely" caused the jury to misapply the court's supplemental instruction.

Accordingly, we reject defendant's claim of plain error.

### IV. Prosecutor's Statements

Defendant next argues that the prosecutor committed reversible error by expressing her personal opinion during opening statement and closing argument. We disagree.

Because defendant made no contemporaneous objections to the statements he now complains were prejudicial, his contentions are subject to review under the plain error standard. *See Wilson v. People*, 743 P.2d 415 (Colo.1987).

Prosecutorial misconduct in closing argument is rarely so egregious as to constitute plain error, and the fact that the defendant did not object to the remarks may indicate a belief that the live argument was not overly damaging. *People v. Avila*, 944 P.2d 673, 676 (Colo.App.1997); *see also People v. Hernandez*, 829 P.2d 394, 396 (Colo.App.1991) (a prosecutor's remark during opening statement must be "particularly egregious" to warrant a new trial).

■■■ A prosecutor's comments must be evaluated in the context of the argument as a whole, and plain error will not be found unless the remarks are flagrant or glaringly improper. *People v. Salyer*, 80 P.3d 831, 839 (Colo.App.2003).

■■■ Here, in opening statement, the prosecutor stated, "The People's opinion support[s] those charges having been filed and support[s] our request for a guilty verdict from you." The prosecutor then summarized the evidence that would be presented.

During closing argument, the prosecutor made three statements indicating what "the People believe" (or what "we believe") had been proved by the evidence.

We see no plain error in the prosecutor's remarks. When the statements are read in context, it is evident they were commentary on the evidence and not, as defendant now suggests, expressions of personal opinion or allusions to evidence not presented to the jury. *See People v. Fears*, 962 P.2d 272, 284 (Colo.App.1997) (prosecutor did not vouch for credibility of witness through use of first person singular in closing argument).

### V. Response to Jury Inquiry

Defendant argues that his conviction for unlawful sexual contact must be reversed because the trial court's response to a jury inquiry effectively directed the jury to find him guilty of this offense. We disagree.

Before giving any additional instruction calculated to avert a mistrial due to jury disagreement over the level of offense, the court should make certain inquiries of the jury. In making these inquiries care must be taken to avoid asking the jury how it is numerically divided and also to avoid disclosure by the jury as to the particular offenses about which a deadlock might exist. Also, any additional instruction ultimately given to the jury should be in type-written form, should be read by the judge to the jury in open court, and then taken by the jury when it again resumes its deliberations.

The court should first ask the jury whether there is a likelihood of progress towards a unanimous verdict upon further deliberation. An affirmative response should require further deliberation without any additional instruction. If the jury indicates that the deadlock is such that progress towards a unanimous verdict is unlikely, the court should then inquire whether the jury is divided over guilt as to any one of the offenses and nonguilt as to all offenses, or instead, whether the division centers only on the particular degree of guilt. In the event the jury impasse relates solely to the issue of guilt as to any one of the offenses and nonguilt as to all offenses, the court in its discretion may give [an instruction urging the jurors to

reexamine their views and consider the views of fellow jurors without sacrificing their own convictions]. If, however, the jury deadlock centers solely on a particular degree of guilt, rather than on the issue of guilt or nonguilt, then the court should consider an additional instruction charging the jury to return a guilty verdict on the lesser offense as long as every essential element of the lesser offense is necessarily included in the greater offense and all jurors unanimously agree on the defendant's guilt as to either the lesser or greater offenses submitted to them for their consideration.

*People v. Lewis*, 676 P.2d 682, 689 (Colo. 1984) (footnote omitted).

"The decision whether to give a *Lewis* instruction or declare a mistrial is a matter of trial court discretion." *People v. Hayward*, 55 P.3d 803, 807 (Colo.App.2002).

Here, the jury informed the trial court: "We have not been able to reach a consensus on two of the counts. We have determined we will not reach consensus any time soon. All official paperwork for the other four counts has been properly filled out awaiting ... further instructions." In response, the trial court sent the jury the following written instruction: "Please complete the verdict forms for all counts on which you agree. Please complete all interrogatories in accordance with the instructions you have been given. Advise the bailiff when completed." After the jury indicated it had complied, the court reviewed the verdict forms.

The verdict forms for count one (attempted second degree murder, which is not at issue in this appeal) and count two (sexual assault, and the lesser included offense of unlawful sexual contact) were blank. However, on the verdict form finding defendant guilty of second degree kidnapping, the jury had completed a special interrogatory indicating that it had unanimously found beyond a reasonable doubt that the victim was subjected to a sexual assault or sexual contact, as defined in the other instructions.

Over defendant's objection, the trial court brought the jury into the courtroom and

asked, with respect to the sexual assault or contact charge, whether the jurors were divided as to "guilt and non-guilt" or "as to the degree of guilt between the greater and lesser offense." The foreperson indicated that they were divided as to the degree of guilt. The trial court then instructed the jury as follows, both orally and in writing:

Ladies and gentlemen of the jury, because you have indicated that the jury is divided as to degree of guilt with respect to Count 2, the Court returns you to your deliberations with the following additional instruction: You shall return a guilty verdict on Count 2 as to the lesser included offense of unlawful sexual contact as long as all jurors unanimously agree on the defendant's guilt as to either the greater offense of sexual assault or the lesser offense of unlawful sexual contact.

If you find the defendant guilty as to either sexual assault or unlawful sexual contact as to Count 2, you are further instructed that you just must also answer the interrogatory to Count 2. If you find the defendant not guilty of sexual assault and not guilty of unlawful sexual contact, you should so indicate on the verdict form. In that event, you must leave the interrogatory to Count 2 unanswered.

Soon thereafter, the jury returned a verdict finding defendant guilty of unlawful sexual contact.

We conclude the trial court's actions fully complied with the procedures outlined in *Lewis. See People v. Jenkins,* 83 P.3d 1122, 1129 (Colo.App.2003) (a trial court does not direct a jury's verdict by complying with the procedures outlined in *Lewis* ).

## VI.  Mittimus

Finally, we agree with defendant that the mittimus erroneously indicates that he pleaded guilty. Likewise, we agree with the People that the mittimus erroneously indicates that the jury made a finding of heat of passion in connection with the second degree assault charge. Accordingly, we remand for correction of these errors.

The judgment is affirmed. The case is remanded for correction of the mittimus consistent with the views expressed in this opinion.

Judge TAUBMAN and Judge LOEB concur.