23CA0757 Peo v Mendez-Reyes 02-12-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0757
Jefferson County District Court No. 13CR1797
Honorable Lily W. Oeffler, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Alexis Aroldo Mendez-Reyes,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND VACATED
IN PART, AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE PAWAR
Gomez and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

---

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kelly A. Corcoran, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Alexis Aroldo Mendez-Reyes, appeals his convictions of first degree burglary, second degree kidnapping, second degree assault, and felony menacing.  We affirm in part, vacate in part, and remand with directions.

## I.     Background

¶ 2     After midnight, Mendez-Reyes went to the townhome that T.T., his ex-girlfriend and the mother of his child, shared with her cousin.  T.T. was still out with friends.  After T.T.'s cousin let him in, Mendez-Reyes grabbed a knife from the kitchen and then went outside and began cutting himself.

¶ 3     When T.T. arrived home, Mendez-Reyes broke back into the townhome and chased her and her cousin with a knife.  The two women ran out the back door and into the courtyard, a common space shared by all of the townhomes in the complex.  Mendez-Reyes grabbed T.T. by her hair and dragged her around the courtyard, eventually pinning her against a wall of the courtyard with his hand on her neck.  Mendez-Reyes ran away when police arrived a short time later.

¶ 4     Mendez-Reyes was charged with attempted second degree murder, first degree burglary, two counts of second degree assault

(T.T. and her cousin), two counts of felony menacing (T.T. and her cousin), and second degree kidnapping.  At trial, the jury found Mendez-Reyes guilty of only first degree burglary, second degree assault of T.T., second degree kidnapping, and misdemeanor menacing of T.T.  Mendez-Reyes was convicted and sentenced to a controlling term of eleven years in prison for first degree burglary, with sentences on the other convictions to run concurrently.

¶ 5     Mendez-Reyes appeals.  He argues that (1) there was insufficient evidence to support his second degree kidnapping conviction and, alternatively, the court erroneously instructed the jury on that offense; (2) the trial court erred by excluding testimony from T.T.'s neighbor on hearsay grounds; (3) the prosecutor engaged in misconduct during closing argument; and (4) the trial court erred by sentencing him for felony menacing where the jury found him guilty of misdemeanor menacing.  We agree that there was insufficient evidence to support the kidnapping conviction and that the court erred by sentencing him for felony menacing.  But we conclude that his other assertions of error do not warrant relief.

## II. Second Degree Kidnapping Evidence Was Insufficient

¶ 6 We review de novo whether the evidence was sufficient to support a conviction. *People v. Donald*, 2020 CO 24, ¶ 18. We view the evidence as a whole and in the light most favorable to the prosecution, giving the prosecution the benefit of all reasonable inferences that might be fairly drawn from the evidence. *Id.* at ¶¶ 18-19. Viewing the evidence this way, we ask whether it is sufficient to support a conclusion by a reasonable mind that the defendant is guilty beyond a reasonable doubt. *Id.* at ¶ 18.

¶ 7 As relevant here, second degree kidnapping requires that a defendant "seize[] and carr[y] any person from one place to another." § 18-3-302(1), C.R.S. 2013. To qualify as movement from one place to another, the movement need not be substantial. *Garcia v. People*, 2022 CO 6, ¶ 28. At the same time, not all movement qualifies as movement from one place to another. *Id.* at ¶ 29. If there is movement, but the movement is not substantial, the movement will qualify as being from one place to another if the movement substantially increases the victim's risk of harm. *See id.* at ¶ 42; *People v. Owens*, 97 P.3d 227, 235 (Colo. App. 2004), *overruled on other grounds by Garcia*, 2022 CO 6.

¶ 8    Mendez-Reyes was convicted of second degree kidnapping for having moved T.T. within the courtyard, which was an open, grassy area that had at least one light, onto which all the back doors of the townhomes directly opened.  Viewed in the light most favorable to the prosecution, the evidence showed the following.  Mendez-Reyes seized control of T.T. at some place within the courtyard near a light.  He then moved her around the courtyard, either by grabbing her hair or placing her in a headlock.  Ultimately, he pinned her up against a wall in the courtyard with his hand on her neck, holding a knife to her temple.  Although Mendez-Reyes initially grabbed T.T. near a light, there was no evidence about the lighting where he pinned her against the wall.  Similarly, nothing about the evidence suggested that where he pinned her against the wall was a more secluded area than where he initially grabbed her.

¶ 9    This evidence was sufficient to establish that Mendez-Reyes seized T.T. and carried her some distance.  But we conclude it was insufficient to establish that he carried her from one place to another.

¶ 10    The alleged kidnapping occurred in a single place: the courtyard.  The evidence does not show that the movement within

4

that place was substantial. Nevertheless, insubstantial movement can substantially increase the risk of harm if the victim is moved to an area that is more secluded, less public, or harder to escape from. *People v. Rogers*, 220 P.3d 931, 936 (Colo. App. 2008), *overruled on other grounds by Garcia*, 2022 CO 6. But there was no evidence that Mendez-Reyes's movement of T.T. did any of these things. Again, there was no evidence that where Mendez-Reyes pinned T.T. was any less well-lit or more secluded than where Mendez-Reyes initially grabbed her. And we cannot say that it is substantially harder to escape from being pinned up against a wall compared to being held in a headlock or by the hair when not pinned against a wall. To be sure, the risks of harm present at the initial seizure compared to those at the end of the movement may have been different. But we cannot say that either risk was substantially greater than the other.

¶ 11 The Attorney General relies on T.T.'s cousin's testimony that Mendez-Reyes dragged T.T. to "the concrete wall in the back" of the courtyard as evidence that he moved her to a more secluded area. But viewed in context, even in the light most favorable to the

prosecution, the testimony does not support that inference. T.T.'s cousin testified that Mendez-Reyes

> grabbed [T.T.] by her hair, and . . . dragged her through the courtyard through — from like the neighbor's back door, she was standing maybe like around right here, and he grabbed her by her hair and was dragging her like this through the grass area, and then that's when he went and picked her back up and he put her against the wall, the concrete wall in the back, and he had the knife to her temple.

It is not reasonable to infer from this testimony that "the concrete wall in the back" was any more secluded than any other part of the courtyard, especially where this movement apparently did not obstruct T.T.'s cousin's view of the incident.

¶ 12       In sum, the evidence did not establish that Mendez-Reyes's movement of T.T. was substantial, nor did the evidence establish that the movement substantially increased her risk of harm. Accordingly, the evidence was insufficient to show that Mendez-Reyes carried T.T. from one place to another for purposes of second degree kidnapping. We must therefore vacate the second degree kidnapping conviction and need not address Mendez-Reyes's argument that the court's jury instruction on that offense was erroneous.

6

## III. Excluded Hearsay

¶ 13    Mendez-Reyes argues that the trial court erred by excluding as hearsay T.T.'s neighbor's testimony that T.T. told her on the night of the attack that bruises on T.T.'s neck were hickeys and not caused by Mendez-Reyes. Mendez-Reyes now argues that excluding this testimony was error because it fell within an exception to hearsay or was not hearsay in the first place because it would not have been admitted for its truth (to show the cause of the bruising). Because Mendez-Reyes did not assert these (or any) arguments against the exclusion of this testimony at trial, these arguments are unpreserved and we will reverse only if the exclusion was plain error. *See People v. Zubiate*, 2013 COA 69, ¶ 23, *aff'd*, 2017 CO 17, *overruled on other grounds by*, *People v. Vanderpauye*, 2023 CO 42.

¶ 14    Plain error must be both obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14. An error is substantial only if it so undermines the fundamental fairness of the trial that it casts serious doubt on the reliability of the conviction. *Id.* We conclude that any error in excluding the neighbor's testimony was not substantial because it was entirely cumulative of T.T.'s testimony.

¶ 15    T.T.'s neighbor's testimony established two things: (1) the bruises on T.T.'s neck were caused by hickeys, not by Mendez-Reyes's attack; and (2) T.T. knew this on the night of the attack. T.T. admitted both of these facts in her own trial testimony. She testified that the bruises were hickeys and not caused by Mendez-Reyes. She also testified that she believed she shared this information with officers at the scene. The only way she could have done this was if she had known the bruises were hickeys at that time. Thus, T.T. effectively admitted that she knew this on the night of the attack. Because T.T. testified to the only two things that her neighbor's excluded testimony could have established, we conclude that any error in excluding the neighbor's testimony was not substantial, was not plain, and does not warrant relief.

## IV.    Prosecutorial Misconduct

¶ 16    Mendez-Reyes next argues that several of the prosecutor's statements during closing argument constituted misconduct. We review claims of prosecutorial misconduct using a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor engaged in misconduct based on the totality of the circumstances. *Id.* Second, if there was

misconduct, we determine whether reversal is warranted under the proper standard of review. *Id.* Here, the alleged misconduct was unpreserved, so plain error applies, and we will reverse only if the misconduct was both obvious and substantial. *See Hagos*, ¶ 14.

¶ 17    Under step one, we afford prosecutors wide latitude in their choice of language, style, and how to respond to arguments by the defense. *People v. Samson*, 2012 COA 167, ¶ 30. We give them the benefit of the doubt when their remarks are ambiguous or inartful because arguments delivered in the heat of trial are not always perfectly scripted. *Id.*

¶ 18    Prosecutors are allowed to comment on the evidence admitted at trial and the reasonable inferences therefrom. *Id.* at ¶ 31. They may also "engage in oratorical embellishment." *Id.* They cannot, however, misstate the evidence, use arguments intended to inflame the jury's passions and prejudices, or assert a personal opinion about the defendant's guilt. *Id.* at ¶ 32.

¶ 19    Applying these standards, we conclude that none of the alleged misconduct warrants reversal.

¶ 20    First, Mendez-Reyes challenges the prosecutor's statement that no other person had a reason to strangle T.T. except Mendez-

Reyes. The prosecutor said this after referring to a CAT scan of T.T.'s neck that showed bruising consistent with strangulation:

> You also heard about the CAT scan, that scan that showed bruising under the neck, under the skin in the neck. That can't be faked. That was a physical finding by medical professionals that corroborated exactly what [T.T.] was saying happened. There's no other person that had a reason to strangle her or was around her to strangle her. Think of the testimony of those on scene. Again, you can't fake that bruising.

¶ 21 Mendez-Reyes suggests that this reference to the absence of another person with motive and opportunity to strangle T.T. was unsupported by the evidence, improperly shifted the burden of proof, and expressed the prosecutor's personal opinion that Mendez-Reyes was guilty. We conclude it did none of those things. Instead, it was a proper comment on the facts in evidence — specifically the absence of any evidence that anyone but Mendez-Reyes caused the bruising seen on the CAT scan.

¶ 22 Second, Mendez-Reyes argues that the first lines of the prosecutor's rebuttal closing were improper:

> Defense counsel did a lot of things there. Let's take a look. First two minutes, points out to you that his client was not identified at the scene by [two witnesses]. Then he spent about

the next ten minutes minimizing. [Mendez-Reyes] was there. He was at the front door, but [T.T.'s cousin] let him in. Put his client at the scene. He had the knife, but the wounds were only superficial. That is a minimization of the highest order.

¶ 23 According to Mendez-Reyes, these comments and subsequent ones characterizing the defense argument as minimizing Mendez-Reyes's behavior were improper. Again, we disagree. These comments were proper comments on facts in evidence and fell within the wide latitude prosecutors have to respond to defense arguments.

¶ 24 Third, Mendez-Reyes contends that the prosecutor misstated the evidence when he said that "a couple witnesses" testified that Mendez-Reyes said during the attack that he was going to prison that night. Mendez-Reyes is correct that only a single witness (T.T.) testified to this statement. But we conclude that this impropriety was neither obvious nor substantial. Although the prosecutor repeatedly referred to Mendez-Reyes's statement during closing, this was the only time the prosecutor mischaracterized the evidence as having been corroborated by a second witness. Therefore, it did not constitute plain error.

11

¶ 25    Fourth, Mendez-Reyes argues that the prosecutor's reference to nineteen-year-old T.T. and her fifteen-year-old cousin as "girls" was improper, especially juxtaposed with the characterization of twenty-one-year-old Mendez-Reyes as a "tough guy." We perceive no impropriety in the characterization of T.T. and her cousin — it is not unreasonable, and certainly not outside the wide latitude prosecutors get during closing argument, to refer to females aged nineteen and under as girls.

¶ 26    Finally, Mendez-Reyes challenges the description of what he did after he initially arrived at the townhome and found T.T. absent:

> You know, you can make an argument that
> most normal people are gone at that point.
> They get the hint. [Mendez-Reyes] doesn't.
> Breaks the screen, jumps through the window.
> Put his hand around [T.T.'s] neck, and he
> didn't hold her. He put his hand around her
> neck and squeezed . . . . This is the mother of
> his child, keep in mind.

¶ 27    The prosecutor's references to what a normal person would do and the fact that Mendez-Reyes and T.T. had a child together were proper comments on facts in evidence and reasonable inferences from them.

¶ 28    We therefore conclude that none of the alleged prosecutorial misconduct warrants reversal.

## V.    Menacing Conviction

¶ 29    Mendez-Reyes argues, and the Attorney General agrees, that the trial court erred by sentencing him for felony menacing because he was convicted of only misdemeanor menacing.  We also agree.

¶ 30    As relevant here, menacing is a class 3 misdemeanor but becomes a class 5 felony if committed by use of "a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon."  § 18-3-206(1)(a), C.R.S. 2013.

¶ 31    The jury found that in committing menacing, Mendez-Reyes did not "possess or use a deadly weapon."  Because the jury did not find Mendez-Reyes guilty of possessing or using a deadly weapon, or anything fashioned in a manner to create a reasonable belief that it was a deadly weapon, the jury did not find Mendez-Reyes guilty of felony menacing.  He can therefore be convicted only of misdemeanor menacing.

## VI. Disposition

¶ 32     Mendez-Reyes's convictions for second degree kidnapping and felony menacing are vacated, and the case is remanded to the trial court with directions to resentence him for misdemeanor menacing. The judgment is otherwise affirmed.

JUDGE GOMEZ and JUDGE BERNARD concur.