COLORADO COURT OF APPEALS                                    **2017COA50**

_____

Court of Appeals No. 14CA2417
El Paso County District Court Nos. 13CR3575, 13CR3586 & 13CR3600
Honorable Robert L. Lowrey, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brock Edward Butson,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE HARRIS
Lichtenstein and Vogt*, JJ., concur

Announced April 20, 2017

_____

Cynthia H. Coffman, Attorney General, Melissa D. Allen, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Kathy Goudy, Alternate Defense Counsel, Carbondale, Colorado, for Defendant-
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1     CRE 408 bars the admission at trial of settlement discussions, or offers to compromise a claim, when the evidence is offered to prove liability for, invalidity of, or amount of a disputed claim.

¶ 2     Defendant Brock Edward Butson was convicted of multiple counts of bank robbery and conspiracy to commit bank robbery. On appeal, he contends that his statements to police during a custodial interrogation constituted settlement negotiations, or an offer to compromise a claim. Thus, he argues, pursuant to Rule 408, his statements should have been excluded at trial.

¶ 3     We conclude that, subject to certain exceptions, Rule 408 bars the admission in a criminal proceeding of statements made in connection with the settlement of a *civil* claim. As Butson acknowledges, his statements to police, even if construed as an offer to compromise, were made during discussions concerning *criminal* charges, not a civil claim. Moreover, his statements, which he made to a government agent, would be admissible under an exception to the rule. We therefore reject Butson's argument that the district court erred in denying his motion to suppress the statements.

¶ 4     We also reject Butson's contentions that the district court erred in joining his three separately charged bank robbery cases for trial and in denying his motion for a special prosecutor. Accordingly, we affirm the judgment of conviction.

## I.     Background

¶ 5     During the summer of 2013, Butson and his two sons robbed several banks in and around Colorado Springs.  In each of the nine robberies, Butson selected the target bank, wrote the demand note, and acted as the designated "getaway driver," while his sons, wearing dark-colored baseball caps each time, robbed the banks.

¶ 6     The spree ended when the police arrested Butson and his sons.  The People charged Butson in three cases (13CR3575, 13CR3586, and 13CR3600) with robbery and conspiracy to commit robbery.  Butson was interviewed by police, waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and provided details about the planning and commission of the robberies.  He later moved to suppress his statements on the theory that he made them during the course of settlement discussions and therefore they were inadmissible at trial under CRE 408.  The district court denied Butson's motion, finding that the evidence did not demonstrate that

2

Butson and the officer were engaged in a mutual effort to compromise or negotiate the charges against Butson or his sons.

¶ 7      In the meantime, while the bank robbery cases were pending, the People filed a new witness tampering complaint against Butson, alleging that he had sent one of his sons a letter from jail, in which he attempted to dissuade the son from testifying at the bank robbery trial.  Because the prosecutor in the bank robbery cases had handled the letter, Butson contended that he was entitled to a special prosecutor in all of his pending cases.  The court denied Butson's request after determining that the prosecutor was not a potential witness in the witness tampering case.

¶ 8      The prosecution moved to join the three bank robbery cases for trial, and the court granted the motion over defense counsel's objection.  A jury found Butson guilty of all but two counts.  A month later, the court dismissed the witness tampering case when the prosecution failed to present sufficient evidence at the preliminary hearing.

## II.    Joinder of the Bank Robbery Cases

¶ 9      Butson first contends that the district court erred by joining the three bank robbery cases for trial.

## A. Standard of Review

¶ 10    Relying on *People v. Bondsteel*, 2015 COA 165, ¶ 27 (*cert. granted* Oct. 31, 2016), the People contend that, notwithstanding Butson's initial objection to joinder of the cases, he waived the claim by failing to renew his objection or to seek a severance during trial. We are not persuaded.

¶ 11    The division in *Bondsteel* held that an objection to joinder is unpreserved if not renewed at trial, *id.*, but the division also acknowledged that its holding departed from nearly fifteen years of contrary precedent. *See People v. Gross*, 39 P.3d 1279, 1282 (Colo. App. 2001) (requiring only a pretrial objection to preserve the issue); *see also People v. Curtis*, 2014 COA 100, ¶ 12 (noting that *People v. Gross* "has been on the books without apparent controversy for almost thirteen years" and concluding that pretrial objection preserves a challenge to joinder). Because Butson's trial preceded the *Bondsteel* decision, even were we to agree with that decision, we would not be inclined to apply its holding to this case because doing so may give rise to due process concerns. *See Bondsteel*, ¶ 30 (recognizing that, "[t]o hold that the issue is waived, despite this

4

precedent, could be a retroactive application of a new rule, which might implicate due process").

¶ 12     We review a decision concerning the joinder of separate cases for an abuse of discretion.  *Curtis*, ¶ 14.  An abuse of discretion occurs when the joinder causes actual prejudice as a result of the jury's inability to separate the facts and legal theories applicable to each offense.  *Id.* at ¶ 15; *People v. Gregg*, 298 P.3d 983, 985-86 (Colo. App. 2011).  A defendant cannot establish actual prejudice where evidence of each offense would have been admissible in separate trials.  *Gregg*, 298 P.3d at 986.

B.     Analysis

¶ 13     A trial court may order two or more criminal complaints to be tried together if the offenses could have been joined in a single complaint.  Crim. P. 13.  Two or more offenses may be charged in the same charging document if the offenses are of the same or similar character or are based on two or more connected acts or transactions or are part of a common scheme or plan.  Crim. P. 8(a)(2).

¶ 14     In evaluating a motion to join cases for trial, the trial court must determine whether the offenses are sufficiently similar to be

tried together without causing juror confusion and whether, under CRE 404(b), evidence of each offense would have been admissible in separate trials. *Gregg*, 298 P.3d at 986.

¶ 15    Butson and his sons committed all of the robberies during the course of a few months and all involved the same handful of banks in relatively close proximity to each other. In each robbery, Butson identified the target bank, wrote a note, and staked out an advantageous spot to wait in the getaway car. Then one of the sons — wearing a baseball cap and sunglasses (the perpetrator was dubbed the "Ball Cap Bandit" by the press) — entered the bank with the note, departed with the cash, and escaped in the getaway car driven by Butson. They robbed some banks more than once.

¶ 16    Butson points out that the robberies involved different banks with different teller-victims, and were sometimes committed by one son and sometimes by the other. But when determining whether multiple offenses qualify for consolidation, "it is not essential that the means of committing the other crimes replicate in all respects the manner in which the crime charged was committed." *People v. Owens*, 97 P.3d 227, 231 (Colo. App. 2004) (quoting *People v. McKibben*, 862 P.2d 991, 993 (Colo. App. 1993)). We conclude that

the robberies were sufficiently similar to satisfy Rules 8(a)(2) and

13. *See Gregg*, 298 P.3d at 986 (robberies of banks located in same city committed within period of several months by common method were sufficiently similar for consolidation purposes).

¶ 17    Additionally, evidence of each of the charged robberies would have been admissible in separate trials.  Under Rule 404(b), evidence of other crimes, wrongs, or acts is inadmissible as "propensity" evidence, but may be introduced to prove motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  CRE 404(b); *see also Gross*, 39 P.3d at 1282.  Such evidence is admissible if its relevance to a material issue in the case is independent of the intermediate inference that a defendant has a bad character and acted in conformity with that bad character, and its probative value is not substantially outweighed by the danger of unfair prejudice.  *People v. Whitlock*, 2014 COA 162, ¶ 12; *see also People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990) (to determine admissibility under CRE 404(b), court asks whether proffered evidence relates to a material fact, whether evidence is logically relevant, whether the logical relevance is independent of intermediate inference that the defendant has a bad character and

acted in conformity therewith, and whether probative value of the evidence is substantially outweighed by its prejudicial effect).

¶ 18    Common plan and scheme are "well-accepted methods of proving the ultimate facts necessary to establish the commission of a crime, without reliance upon an impermissible inference from bad character." *People v. Rath*, 44 P.3d 1033, 1040 (Colo. 2002).

¶ 19    At trial, Butson denied that he had participated in any of the robberies and argued instead that his sons had implicated him to secure favorable plea deals. The bank robberies charged in each of the separate complaints established a pattern of behavior by Butson — he planned the robberies, he wrote the note, he drove the getaway car — that made it more probable that he was an active participant, rather than an innocent bystander. For example, the pattern of conduct tended to establish that Butson was aware of the robberies, and, therefore, as the designated "getaway driver," was not in fact driving the car on each occasion for another, permissive reason. *See, e.g.*, *People v. Morales*, 2012 COA 2, ¶¶ 32-33 (home burglaries, involving "defendant's particular approach," were sufficiently similar to show intent, modus operandi, and common plan); *see also United States v. McGuire*, 27 F.3d 457, 461 (10th Cir.

8

1994) (series of eight bank robberies "had many common characteristics," including traveling to a medium-sized city, staying in town for one or two days, purchasing an inexpensive used car, and planning a specific getaway driving strategy, thus establishing the robberies were "but a part of a larger common scheme or plan"); *United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982) (evidence showed common scheme or plan where, among other similarities, defendant drove the getaway vehicle and used her children as a "cover" in both the prior bank robbery and the one at issue).

¶ 20    Butson nonetheless contends that joinder was improper because admission of the other acts evidence affected the jury's ability to separate the facts and legal principles applicable to each offense. That contention is belied by the jury's verdict. Counts one and two of the complaint filed in case 13CR3600 charged aggravated robbery and conspiracy to commit aggravated robbery, respectively. The jury acquitted on these charges — the two most serious counts in the consolidated complaints — demonstrating its ability to distinguish among the facts and law applicable to each charge. *See People v. Garcia*, 2012 COA 79, ¶ 30.

9

¶ 21    Accordingly, we discern no abuse of discretion by the district court in joining the cases for trial.

¶ 22    Alternatively, Butson argues that, even if the cases were properly joined, the district court erred in failing to instruct the jury that it could consider evidence of the two bank robberies charged in cases 13CR3575 and 13CR3586 only for the limited purposes allowed under Rule 404(b).  Butson did not request a limiting instruction, though, and so we review any error under a plain error standard of review.  *People v. Underwood*, 53 P.3d 765, 771 (Colo. App. 2002).  Under this standard, we will reverse only if the error was obvious and "undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction."  *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo. 2003)).

¶ 23    The People contend that a limiting instruction was unnecessary because, once the cases were consolidated for trial, all of the counts merged into a single case such that Rule 404(b) was no longer applicable.

¶ 24    We need not resolve that issue, however, because even if Rule 404(b) is applicable in a consolidated trial, it is defense counsel who

is "charged with the task of deciding whether a limiting instruction is desirable." *Bondsteel*, ¶ 85 (quoting *People v. Griffin*, 224 P.3d 292, 298 (Colo. App. 2009)). Here, defense counsel did not ask for one.

¶ 25     And even if we assume, without deciding, that the district court erred by failing to give a Rule 404(b) limiting instruction, we conclude, under the circumstances of this case, that any error does not rise to plain error. *See Davis v. People*, 2013 CO 57, ¶ 21 (concluding that lack of a limiting instruction, when not requested by counsel and not required by statute, did not constitute reversible error). We are not persuaded, as Butson argues, that it was "almost impossible" for the jury to sort through the evidence and determine "what evidence was other acts, and what was direct evidence." Though the district court did not give a Rule 404(b) limiting instruction, it did instruct the jury that "[e]ach count charges a separate and distinct offense and the evidence and law applicable to each count should be considered separately, uninfluenced by your decision as to any other count." We presume the jury followed this instruction, which limited the jury's consideration of the evidence. *See Curtis*, ¶ 23. Moreover, in this case, that presumption is

confirmed by the jury's verdict which, as we have noted, reflects careful parsing of the evidence of guilt as to each count.

### III. Special Prosecutor

¶ 26 Butson next contends that, where the lead prosecutor in the consolidated bank robbery cases was endorsed as a witness in the later-filed witness tampering case, the district court erred in denying his motion for a special prosecutor. We disagree.

¶ 27 In the trial court, Butson argued that, pursuant to Rule 3.7 of the Colorado Rules of Professional Conduct, the prosecutor could not act as both a witness and the prosecuting attorney in the witness tampering case. But there was no similar allegation that the prosecutor might be called as a witness in the bank robbery cases. So Butson argued that a special prosecutor was necessary in the trial of those consolidated cases to prevent "the appearance of impropriety" created by the prosecutor's potential appearance as a witness in the related witness tampering case.

¶ 28 We review a district court's decision whether to disqualify a district attorney, and therefore whether to appoint a special prosecutor, for an abuse of discretion. *Dunlap v. People,* 173 P.3d 1054, 1094 (Colo. 2007).

¶ 29    Prior to its amendment in 2002, section 20-1-107 provided for disqualification if the district attorney was "interested" in the case, § 20-1-107, C.R.S. 2001, which appellate courts interpreted to include a circumstance that created "an appearance of impropriety," *People v. Palomo*, 31 P.3d 879, 882 (Colo. 2001). The amended version of section 20-1-107, however, eliminated an appearance of impropriety as a basis for disqualification. *People in Interest of N.R.*, 139 P.3d 671, 675 (Colo. 2006).[1]

¶ 30    Accordingly, Butson's only argument in support of his request for a special prosecutor in the bank robbery cases was not a cognizable basis for disqualification of the prosecutor.

¶ 31    On appeal, while Butson insists that his "right to a fair trial" in the bank robbery cases "was impacted," he does not explain how, and we are unable to discern any possible prejudice. *See People v. Loper*, 241 P.3d 543, 546 (Colo. 2010) (A party moving for disqualification on the basis that he will not receive a fair trial must

---

[1] The current version of the statute specifies that "[a] district attorney may only be disqualified in a particular case at the request of the district attorney or upon a showing that the district attorney has a personal or financial interest or finds special circumstances that would render it unlikely that the defendant would receive a fair trial." § 20-1-107, C.R.S. 2016.

point to "actual facts and evidence in the record supporting the contention, not mere hypothetical information."). The witness tampering case was dismissed shortly after the bank robbery trial, at the preliminary hearing stage. Thus, consistent with his statements to the court at the hearing on Butson's motion, the prosecutor was never called as a witness in the witness tampering case. And no mention was made at the bank robbery trial of any letter allegedly sent by Butson to one of his sons or any other attempt by him to tamper with a witness.

¶ 32 We therefore conclude that the district court did not abuse its discretion in denying Butson's motion for a special prosecutor.

IV. Suppression of Statements Under CRE 408

A. The Custodial Interrogation and Butson's Motion to Suppress

¶ 33 Several days after Butson's arrest, he contacted a detective from jail to request a meeting. At the hearing on his motion to suppress, Butson testified that when the detective arrived at the jail, Butson asked "if it would be possible to speak with him and the DA together for an interview to get consideration for my children." The detective could not secure the district attorney's presence, according to Butson, but told Butson that he would take a

14

statement and "do everything [he] could."  The detective testified that he did not recall Butson offering to provide information in exchange for sentencing concessions or other "consideration" for himself or for his sons.  He denied telling Butson that he would "in any way put in a good word on his behalf for the cooperation."

¶ 34     The detective transported Butson from jail to the police station, where Butson submitted to a videotaped interview.  Prior to questioning, Butson was advised of, and validly waived, his *Miranda* rights.  For the next approximately ninety minutes, he recounted details of each of the bank robberies, admitting his own involvement and implicating his children in the crimes.  During this part of the interview, he did not tell the detective that he hoped or expected that his cooperation would inure to the benefit of his children.

¶ 35     As the interview was winding down, and in response to a question about his sons, Butson told the detective that he "want[ed] to do everything [he could] to get them off the hook entirely," and that he "want[ed] to take the entire blame."  The detective responded, "Obviously you know that ain't gonna happen."  At the conclusion of the interview, after the detective had explained that "we don't dole out the punishment," Butson said, "well, if you guys

have any influence at all on the punishment, I would ask that you try to minimize the damage it's gonna cause to my, my boys."

¶ 36     Butson filed a motion to suppress evidence, asserting that he made the statements to the detective in an effort to compromise a claim and therefore the entire custodial interview was inadmissible under Rule 408 to prove his guilt.  The court denied the motion, reasoning that Butson had never made any formal offer to compromise a claim and the parties had not engaged in "give-[and]-take" negotiations.

## B.     Standard of Review

¶ 37     In reviewing a trial court's suppression order, we defer to the court's factual findings, provided they are supported by competent evidence in the record.  *People v. Webb*, 2014 CO 36, ¶ 9.  Butson's interview with the detective at the police station was videotaped, though some of the communications that Butson says are important occurred before the recorded interview.  To the extent the unrecorded communications are relevant, we defer to the district court's findings concerning those communications but, with respect to the videotaped statements, we are in the same position as the district court to determine whether those statements are entitled to

16

protection under CRE 408, a question of law that we review de novo in any event. *See People v. Madrid,* 179 P.3d 1010, 1014 (Colo. 2008); *see also People v. Reed,* 216 P.3d 55, 56 (Colo. App. 2008) (appellate court reviews trial court's interpretation of a rule of evidence de novo).

## C.    CRE 408

¶ 38     The current version of CRE 408 provides as follows:

> (a) Prohibited uses.  Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
>
> (b) Permitted uses.  This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a).  Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an

17

effort to obstruct a criminal investigation or prosecution.

¶ 39     Butson argues that his custodial interview constituted settlement discussions during which he offered to compromise a claim — that is, the criminal charges against his sons — by providing information about the bank robberies.

¶ 40     We note at the outset that, as the trial court observed, the applicability to criminal proceedings of the rule barring admission of offers to compromise a claim has been raised in only one Colorado case, *McClain v. People*, 111 Colo. 271, 141 P.2d 685 (1943).[2]  The supreme court ultimately "pass[ed] th[e] question" whether the rule barred admission at trial of the defendant's offer to plead guilty in exchange for a change of venue.  *Id.* at 274, 141 P.2d at 687.  Instead, the court concluded that the defendant's statements to the prosecutor were admissible "for another reason": as an "admission of guilt."  *Id.* at 275, 141 P.2d at 687.

---

[2] The principle discussed in *McClain v. People*, 111 Colo. 271, 141 P.2d 685 (1943) — that offers to compromise a claim are ordinarily inadmissible at trial — was not codified in CRE 408 until 1980, when the Colorado Rules of Evidence became effective.

18

¶ 41    We therefore look to the language of the rule and to cases addressing the issue under the analogous federal rule. *See Stewart v. Rice*, 47 P.3d 316, 321 (Colo. 2002) (when a state rule of evidence is similar to the federal rule, we may look to the federal authority for guidance in construing our rule). Using this framework, we discern two problems with Butson's argument: first, as a matter of plain language, the term "claim" refers to a civil claim, and, second, even if the criminal charges constituted a "claim" that Butson had offered to settle, his settlement statements were made to a government agent and therefore were nonetheless admissible in his criminal trial under CRE 408(a)(2).

¶ 42    In construing a rule of evidence, we apply standard principles of statutory construction. *In re Marriage of Wiggins*, 2012 CO 44, ¶ 24. Accordingly, we first aim to interpret a rule's language consistent with its "commonly understood and accepted meaning." *Leaffer v. Zarlengo*, 44 P.3d 1072, 1078 (Colo. 2002) (quoting *Farmers Ins. Exch. v. Bill Boom Inc.*, 961 P.2d 465, 469 (Colo. 1998)). If the rule is unambiguous, we apply it as written. *Wiggins*, ¶ 24.

¶ 43    CRE 408(a) prohibits admission of settlement offers when offered to prove "liability for, invalidity of, or amount of a claim" that was "disputed as to validity or amount . . . ."  This language is commonly understood as referring to a civil claim.  We do not ordinarily refer to bank robbery charges as "claims" for which there might be a dispute concerning "validity or amount."  *Cf. United States v. Baker*, 926 F.2d 179, 180 (2d Cir. 1991) ("The reference to 'a claim which was disputed as to either validity or amount' does not easily embrace an attempt to bargain over criminal charges."), *superseded by rule as stated in United States v. Davis*, 596 F.3d 852 (D.C. Cir. 2010).

¶ 44    We find support for this interpretation of "claim" in a different rule of evidence, CRE 410, which explicitly addresses a defendant's offer of information in exchange for leniency in a criminal case.[3]  Under Rule 410, statements made in connection with a guilty plea or an offer to plead guilty are not admissible in any civil or criminal

---

[3] Butson could not rely on CRE 410, however, because a division of this court has interpreted the rule to apply only when the prosecutor has knowledge of, and has agreed to be bound by, the plea discussions, *People v. Martinez*, 36 P.3d 154, 161 (Colo. App. 2001), a prerequisite that was not satisfied here.

action against the person who made the plea or offer.  If the term "claim" in Rule 408 also encompassed criminal charges that could be "compromised" through discussions akin to plea negotiations, CRE 410 would seem to be unnecessary.  *Cf. Baker*, 926 F.2d at 180.

¶ 45    Butson has not pointed to any case, and we have not uncovered one, where a court has interpreted the term "claim" in Rule 408 to mean "criminal charges."  Instead, cases interpreting the scope of Rule 408 all involve statements made in an attempt to settle a civil claim.  The question in these cases is whether Rule 408 prohibits the admission of such statements at a criminal trial, not whether the rule protects inculpatory statements by the defendant made in the context of the criminal proceeding itself.  *See, e.g.*, *United States v. Logan*, 250 F.3d 350, 367 (6th Cir. 2001) (issue was whether defendant's civil settlement agreement with the Department of Housing and Urban Development was admissible at his mortgage fraud trial), *superseded by rule as stated in McAuliffe v. United States*, 514 F. App'x 542 (6th Cir. 2013); *United States v. Hays*, 872 F.2d 582, 588-89 (5th Cir. 1989) (issue was whether

evidence of settlement agreement between a bank and its officers was admissible in the officers' criminal fraud trial).

¶ 46 Thus, we conclude that, as a general matter, Rule 408 precludes admission of statements made for the purpose of settling a *civil* claim. But even so, there are exceptions to Rule 408's bar.

¶ 47 That brings us to the second problem with Butson's argument. Even if his interview with the detective could be construed as discussions to settle a "claim," his statements are nonetheless admissible under CRE 408(a)(2) because they were made to a government agent.

¶ 48 Prior to the 2006 amendment to Fed. R. Evid. 408, which added subsection (a)(2),[4] courts were divided on the Rule's applicability to criminal proceedings. *Compare, e.g., United States v. Prewitt*, 34 F.3d 436, 439 (7th Cir. 1994) (the defendant's statements made during negotiations with a state agency to settle civil investigation into deceptive business practices were admissible at his criminal trial on charges of defrauding investors), *and State v.*

---

[4] CRE 408 was amended in 2007 to mirror the federal rule. Rule Change 2007(13), Colorado Rules of Evidence (Amended and Adopted by the Court, En Banc, Sept. 27, 2007), https://perma.cc/U6G7-BTUB.

*Mead*, 27 P.3d 1115, 1128 (Utah 2001) (the defendant's statements made in an attempt to settle a wrongful death case were admissible in his murder trial), *with United States v. Bailey*, 327 F.3d 1131, 1146 (10th Cir. 2003) (statements made by the defendant during settlement discussions with investors were inadmissible in his later criminal fraud trial).

¶ 49      The amendment made clear that Rule 408 applies to both civil and criminal proceedings. *See McAuliffe*, 514 F. App'x at 549 ("A 2006 rule amendment . . . conclusively settled a circuit split in favor of applying Rule 408 in criminal cases."). However, Rule 408 now draws "a distinction between civil disputes involving the government and civil disputes involving private parties." *Davis*, 596 F.3d at 860. Under the current version of Rule 408, a defendant's statements in settlement negotiations with government agencies may be admitted in a criminal case. CRE 408(a)(2). But if the claim arises from a dispute with a private party, the defendant's offer of settlement and related statements may not be admitted in a criminal prosecution when "offered to prove liability for, invalidity of, or amount of a claim." *Davis*, 596 F.3d at 860 (quoting Fed. R. Evid. 408(a)).

¶ 50    In *Davis*, for example, the defendant was charged with embezzling funds from the fraternity for which he served as treasurer. 596 F.3d at 853. At trial, the government introduced testimony from the incoming treasurer about a conversation that had occurred prior to the filing of the criminal charges. During that conversation, the incoming treasurer confronted the defendant about $29,000 in checks which, contrary to the defendant's earlier assurances, had apparently not been deposited into the fraternity bank account. The defendant did not admit any wrongdoing, but he offered to pay half the $29,000 to "make th[e] situation just go away." *Id.* at 854.

¶ 51    On appeal, the court agreed with the defendant that his statements should have been excluded under Rule 408. The defendant offered to compromise a disputed claim with a private party, the court reasoned, and the government introduced the statements to prove his "liability" for the claim. *Id.* at 859.

¶ 52    In contrast to the circumstances in *Davis*, the detective with whom Butson spoke was a government agent employed by the Colorado Springs Police Department, and the discussion related to criminal charges brought by the District Attorney's Office in the

24

exercise of its investigative or enforcement authority. CRE 408(a)(2).

¶ 53    The advisory committee note to amended Fed. R. Evid. 408 explains that the new rule provides no protection for statements made to government officials because "[w]here an individual makes a statement in the presence of government agents, its subsequent admission in a criminal case should not be unexpected." Fed. R. Evid. 408 advisory committee's note. Butson could not have reasonably expected that inculpatory statements he made to a police officer during a custodial interrogation would be excluded from his criminal trial. In fact, he explicitly agreed, when he waived his rights under *Miranda*, that his statements could be used against him in his criminal case.

¶ 54    We therefore conclude, albeit for reasons different than the district court, that CRE 408 does not bar the admission of Butson's statements to the detective.[5] *See People v. Terhorst*, 2015 COA 110,

---

[5] Still, we conclude that the record supports the district court's finding that neither the pre-interview exchange at the jail nor the interview itself amounted to settlement discussions because Butson did not make a concrete offer to provide anything of value in exchange for leniency and the detective made clear from the outset

¶ 24 (appellate court may affirm the denial of a suppression motion on any ground supported by the record, even if it is a ground not relied on by the district court).  Accordingly, the district court did not err in denying Butson's motion to suppress his statements.

## V.    Conclusion

¶ 55     The judgment of conviction is affirmed.

JUDGE LICHTENSTEIN and JUDGE VOGT concur.

---

that he could not "settle" the criminal cases or otherwise negotiate for a particular outcome.