Opinion by JUDGE BERGER
¶ 1 In a consolidated trial, a jury convicted Francis Gayle Buell of attempted aggravated robbery, theft, and second degree assault arising from one shoplifting incident, and of aggravated robbery, theft, and felony menacing arising from a separate shoplifting incident.
¶ 2 Buell appeals, contending that (1) the court erred in consolidating his two cases; (2) the evidence was insufficient to convict him of either aggravated or attempted aggravated robbery; (3) the trial court gave an incorrect supplemental jury instruction for aggravated robbery; (4) the court erred in not instructing the jury on third degree assault as a lesser included offense of second degree assault; and (5) the court erred in admitting evidence of a prior theft. We address and reject these contentions and affirm.
I. Relevant Facts and Procedural History
¶ 3 The jury heard the following evidence. A loss prevention officer in a Greeley Sears store saw Buell put jewelry in his pockets and leave the store without paying. The loss prevention officer and another Sears employee followed Buell and caught up with him outside of the store. The loss prevention officer confronted Buell about the jewelry. Buell told the loss prevention officer to "back off," pulled out a knife, and then moved toward him. When the officer backed away, Buell fled the scene.
¶ 4 Several months later, a loss prevention officer in a Greeley Safeway store saw Buell conceal packages of steaks under his jacket and leave the store without paying for them. The loss prevention officer confronted Buell at the entrance to the store and asked him to come back inside. When Buell refused, the officer grabbed his arm, forced him back inside, and attempted to handcuff him. Buell resisted and thrust a knife at the officer, cutting the officer's hand. Buell then fled.
¶ 5 The prosecution charged Buell with aggravated robbery, attempted aggravated robbery, two counts of theft, felony menacing, and second degree assault, in connection with these two incidents.
II. The Trial Court Did Not Err in Consolidating Buell's Two Cases
¶ 6 Buell argues that the trial court abused its discretion when it consolidated the separate cases involving the Safeway and Sears incidents. More specifically, relying on People v. Taylor , 804 P.2d 196 (Colo. App. 1990), he argues that the prosecution failed to show that the Sears and Safeway incidents were "part of a schematic whole" or "part of a common scheme or plan." See People v. Williams , 2016 COA 48, ¶ 33, --- P.3d ---- (cert. granted in part July 31, 2017).
¶ 7 Before addressing the merits of this argument, we first take up the Attorney General's contention that Buell waived this argument. Relying on People v. Bondsteel , 2015 COA 165, ¶ 27, 442 P.3d 880 (cert. granted Oct. 31, 2016), the Attorney General argues that Buell waived this contention by not renewing his pretrial objection to consolidation.
¶ 8 True, the division in Bondsteel , ¶ 27, held that an objection to joinder is unpreserved if not renewed at trial. However, the division in Bondsteel did not apply this rule there because "[t]o hold that the issue is waived, despite [nearly fifteen years of] precedent, could be a retroactive application of a new rule, which might implicate due process." Id. at ¶ 30. Other divisions of this court have also declined to apply Bondsteel 's holding in cases where the trial preceded the Bondsteel decision. See People v. Butson , 2017 COA 50, ¶¶ 10-11. 410 P.3d 744 ;
*965 People v. Raehal , 2017 COA 18, ¶¶ 9-10, 401 P.3d 117.
¶ 9 Thus, irrespective of whether Bondsteel was correctly decided, we would not apply it here. Instead, we proceed to the merits of Buell's contention that the trial court improperly consolidated his cases because they were not part of a common scheme or plan.[1]
¶ 10 We review a court's decision to consolidate charges for an abuse of discretion. Butson , ¶ 12. "[W]e may affirm a trial court's ruling on grounds different from those employed by that court, as long as they are supported by the record." People v. Chase , 2013 COA 27, ¶ 17, 411 P.3d 740. We reject Buell's argument because Crim. P. 8(a)(2) provides three disjunctive bases for consolidation. One of those bases is that the offenses "are of the same or similar character." Regardless of whether the two shoplifting incidents are part of a common scheme or design, they were "of the same or similar character" in three ways.
¶ 11 First, within a few months, Buell shoplifted from two retail stores in the same city. Second, he did so by secreting merchandise in his clothing. Third, in both cases Buell elevated two minor crimes to the very serious crimes of completed (and attempted) aggravated robbery by pulling a knife on the stores' loss prevention officers when they attempted to apprehend him.
¶ 12 Although Buell points to some factual differences between the two shopliftings, we conclude the two offenses were sufficiently "of the same or similar character" to qualify for consolidation. Indeed, to so qualify, "it is not essential that the means of committing the other crimes replicate in all respects the manner in which the crime charged was committed." People v. Owens , 97 P.3d 227, 231 (Colo. App. 2004) (quoting People v. McKibben , 862 P.2d 991, 993 (Colo. App. 1993) ).
¶ 13 The question arises whether cases can be consolidated under any provision of Crim. P. 8(a)(2) if the evidence supporting both cases is not cross-admissible under CRE 404(b). True, as discussed in the following paragraph, at least one division of this court has held, and another might be deemed to have held, that a trial court may not consolidate cases under Crim. P. 8(a)(2) unless it determines that the evidence supporting both cases is cross-admissible under CRE 404(b). Even so, we reject that interpretation of Crim. P. 8(a)(2).
¶ 14 In People v. Butson , relying on People v. Gregg , 298 P.3d 983, 986 (Colo. App. 2011), the division held that "[i]n evaluating a motion to join cases for trial, the trial court must determine whether the offenses are sufficiently similar to be tried together without causing juror confusion and whether, under CRE 404(b), evidence of each offense would have been admissible in separate trials." Butson , ¶ 14 (emphasis added).
¶ 15 However, the plain language of Crim. P. 8(a)(2) does not require a cross-admissibility analysis under CRE 404(b) when consolidation is made under the "same or similar character" criterion. Nor, as we read them, do the cases relied on by Butson or Gregg require such a result.
¶ 16 In People v. Gross , 39 P.3d 1279, 1282 (Colo. App. 2001), another division held "[t]here is no prejudice [from consolidating cases] where evidence of each transaction would be admissible in separate trials." Similarly, in People v. Curtis , 2014 COA 100, ¶ 16, 350 P.3d 949, the division held that "offenses may be joined if the evidence of each offense would be admissible in separate trials." But in neither case did the division hold that a cross-admissibility analysis was a condition precedent to consolidation under all of the separate Crim. P. 8(a)(2) grounds. Neither did Owens , 97 P.3d at 231-32, cited in Gregg , 298 P.3d at 986, so hold.[2]
*966 ¶ 17 To be sure, an otherwise incorrect consolidation may not require reversal because the evidence is cross-admissible between the two cases under CRE 404(b) ; if the evidence is cross-admissible, usually there can be no prejudice from an improper consolidation.[3] But recognizing that a CRE 404(b) analysis may save an improper consolidation does not support Butson 's conclusion that a CRE 404(b) analysis is a condition precedent to consolidation under the "same or similar character" criterion of Crim. P. 8(a)(2). To the extent that Butson and Gregg require such an analysis, we decline to follow them. Bondsteel , ¶ 14 (we are not bound by the decisions of other divisions of this court).
¶ 18 Because the consolidation was made under the "same or similar character" criterion of Crim. P. 8(a)(2), we need not address whether a CRE 404(b) analysis would result in a conclusion that the evidence of each incident was not cross-admissible. We hold only that no such analysis is required by the "same or similar character" criterion of Crim. P. 8(a)(2).[4]
¶ 19 For these reasons, the trial court did not abuse its discretion in consolidating the two cases.
III. The Evidence Was Sufficient to Support Buell's Convictions for Aggravated Robbery and Attempted Aggravated Robbery
¶ 20 Buell concedes that he committed theft and used force or intimidation after stealing the property, but he argues that the evidence is insufficient to support his convictions for aggravated robbery and attempted aggravated robbery because he used force or intimidation only after he had taken the property.
¶ 21 "A person who commits robbery is guilty of aggravated robbery if during the act of robbery or immediate flight therefrom ... [h]e is armed with a deadly weapon with intent, if resisted, to kill, maim, or wound the person robbed or any other person...." § 18-4-302(1)(a), C.R.S. 2017. Thus, to convict Buell of aggravated robbery, the prosecution had to prove all the elements of simple robbery and that he used a deadly weapon. See Doubleday v. People , 2016 CO 3, ¶ 26, 364 P.3d 193.
¶ 22 A person commits robbery if he or she "knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation." § 18-4-301(1), C.R.S. 2017.
¶ 23 In People v. Bartowsheski , 661 P.2d 235, 243-45 (Colo. 1983), the supreme court held that the evidence was sufficient to support a robbery conviction when the defendant entered a house to steal guns; attacked and killed a child in his path; and, at some point after the attack, took guns from the house. Bartowsheski argued that the theft of the guns was not accomplished by force because "there was no evidence that the killing occurred immediately prior to or at the same time as the taking." Id. at 243. The supreme court disagreed and held that "[t]he gravamen of robbery is the application of physical force or intimidation against the victim at any time during the course of a transaction *967 culminating in the taking of property from the victim's person or presence ." Id. at 244 (emphasis added). "There is no requirement that the application of force or intimidation must be virtually contemporaneous with the taking." Id.
¶ 24 Following Bartowsheski , divisions of this court have held that when a defendant uses force or intimidation to retain control over property he has already taken, he commits robbery. See People v. Villalobos , 159 P.3d 624, 627 (Colo. App. 2006) ; People v. Foster , 971 P.2d 1082, 1085 (Colo. App. 1998) ; People v. Fox , 928 P.2d 820, 821 (Colo. App. 1996).
¶ 25 In Foster , a loss prevention officer saw the defendant take two bed skirts and leave the store without paying for them. 971 P.2d at 1084. The officer followed the defendant out of the store and tried to stop him from leaving by grabbing his jacket. Id. The defendant smashed the officer's hand in a car door and drove away. Id. A division of this court found the evidence was sufficient to support a robbery conviction because the defendant "used force to continue his unlawful possession of [the stolen bed skirts], and that, in doing so, defendant removed the articles from the 'presence' of the [loss prevention officer]." Id. at 1085 (emphasis added).
¶ 26 Buell recognizes that Foster and other decisions of this court have rejected his argument that a defendant can only be convicted of robbery if he uses force or intimidation before, or during, the taking of property. Nonetheless, he maintains that these cases were wrongly decided and that we should not follow them here. We have examined these decisions, conclude they are faithful to Bartowsheski , and see no reason to depart from them.
¶ 27 In view of our refusal to depart from established case law, plus Buell's concession that he committed theft and used a knife to avoid apprehension, we necessarily conclude that the evidence was sufficient to support his aggravated and attempted aggravated robbery convictions.
IV. The Supplemental Instruction on Aggravated Robbery was Proper
¶ 28 Over Buell's objection, the trial court instructed the jury as follows:
When considering the charge of aggravated robbery, the jury may consider the application of physical force or intimidation against the victim at any time during the course of a transaction culminating in the taking of property from the victim's person or presence.
The quoted language comes directly from Bartowsheski , 661 P.2d at 244.
¶ 29 Buell concedes that this instruction is an accurate statement of law based on the court of appeals decisions with which he disagrees. Still, for the same reasons he contends that Bartowsheski 's progeny was wrongly decided, he argues that this instruction was not supported by the evidence and was misleading. Because we have already rejected Buell's reading of Bartowsheski , we reject his arguments that this instruction was erroneous.
V. The Trial Court's Refusal to Instruct the Jury on Third Degree Assault was Proper
¶ 30 Buell also contends that the trial court erroneously refused to instruct the jury on third degree assault as a lesser included offense of second degree assault.
¶ 31 We review the refusal of a lesser included offense instruction for an abuse of discretion. People v. Nozolino , 2014 COA 95, ¶ 43, 350 P.3d 940. A trial court is only required to give a lesser included offense instruction when there is "a rational basis in the evidence to support a verdict acquitting him of a greater offense ... and convicting him of the lesser offense." Bartowsheski , 661 P.2d at 242 ; see § 18-1-408(6), C.R.S. 2017. "[T]he mere chance that a jury may reject uncontroverted testimony and convict on the lesser charge does not require the trial court to instruct the jury on the lesser charge." People v. Houser , 2013 COA 11, ¶ 83, 337 P.3d 1238 (quoting People v. Ramirez , 18 P.3d 822, 827 (Colo. App. 2000) ). So, we must determine whether a jury could have rationally acquitted Buell of second degree *968 assault and convicted him of third degree assault.
¶ 32 As relevant here, a defendant commits second degree assault when, "[w]ith intent to cause bodily injury to another person, he or she causes such injury to any person by means of a deadly weapon." § 18-3-203(1)(b), C.R.S. 2017. In contrast, when a defendant intentionally injures another without the use of a deadly weapon, he or she commits third degree assault. § 18-3-204(1)(a), C.R.S. 2017. Buell does not dispute that he injured another. Therefore, whether the jury could rationally convict Buell of third degree assault, and acquit him of second degree assault, turns on whether Buell used a deadly weapon.
¶ 33 A deadly weapon is "[a] knife , bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate, that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury." § 18-1-901(3)(e)(II), C.R.S. 2017 (emphasis added). Under this definition, a knife is not a deadly weapon per se. Instead, determining whether a knife is a deadly weapon involves a two-step inquiry: (1) did the defendant intend to use the knife as a weapon; and if so, (2) was the knife capable of producing serious bodily injury? People v. Stewart , 55 P.3d 107, 117 (Colo. 2002).
¶ 34 Buell does not dispute that he intended to use the knife as a weapon, but he argues that the jury could have reasonably concluded that the knife was not capable of producing serious bodily injury because it only "scratched" the Safeway loss prevention officer and because there was no evidence that it was sharp.
¶ 35 However, "[w]hether an object is a deadly weapon does not depend upon the ultimate result of an object's use." People v. Saleh , 45 P.3d 1272, 1275 (Colo. 2002). Thus, evidence that the knife only scratched the Safeway loss prevention officer was irrelevant to the determination of whether it was a deadly weapon.
¶ 36 What was highly relevant to the determination of whether the knife was a deadly weapon was uncontroverted testimony of the Safeway loss prevention officer that it was four to five inches long. Even if the knife blade was dull, because of its size, the jury could not have reasonably concluded that it was incapable of producing serious bodily injury. And because a reasonable jury could not have concluded that the knife was anything other than a deadly weapon, it could not have rationally acquitted Buell of second degree assault and convicted him of third degree assault.
¶ 37 For these reasons, the trial court did not err when it declined to instruct the jury on third degree assault.
VI. Any Error by the Trial Court in Admitting Evidence of Buell's Prior Theft Was Harmless
¶ 38 Lastly, Buell argues the court erred in admitting evidence of a prior incident in which he pleaded guilty to theft from Kohl's.
¶ 39 This prior act evidence primarily consisted of testimony by a Kohl's loss prevention officer that Buell hid merchandise under his clothes, left the store without paying, and then fled when he was confronted outside the store by the officer. The court also admitted Kohl's surveillance video of Buell.
¶ 40 Buell argues that this prior bad act evidence was inadmissible because its only purpose was to prove that he had a propensity for shoplifting. Although we have concerns about the admissibility of this evidence, we need not resolve those concerns here because any error in the admission of this evidence was harmless. Yusem v. People , 210 P.3d 458, 469 (Colo. 2009).
¶ 41 "The proper inquiry in determining a harmless error question is not whether there was sufficient evidence to support the verdict without the improperly admitted evidence, but, rather, whether the error substantially influenced the verdict or affected the fairness of the trial proceedings." People v. Gaffney , 769 P.2d 1081, 1088 (Colo. 1989).
¶ 42 The Kohl's evidence could not have substantially influenced the verdict because of the overwhelming evidence of Buell's guilt of the charged offenses. See *969 Tevlin v. People , 715 P.2d 338, 341 (Colo. 1986) ; see also People v. Smith , 77 P.3d 751, 760 (Colo. App. 2003) ("Here, even if we assume that admitting evidence of the nature of defendant's prior convictions was error under Old Chief v. United States , 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), we conclude the error was harmless beyond a reasonable doubt because of the overwhelming evidence of defendant's guilt, including his own testimony."). The jury saw a video of Buell stealing from Sears, heard undisputed testimony from both the Safeway and Sears loss prevention officers about Buell stealing merchandise and threatening them with a knife, and saw a picture of the wound Buell caused when he stabbed the Safeway loss prevention officer.
¶ 43 Improperly admitted evidence has less of an impact on a verdict when a court admits it alongside properly admitted evidence of more serious acts. See People v. Herron , 251 P.3d 1190, 1198 (Colo. App. 2010). In Herron , the trial court properly admitted evidence that the defendant had exposed himself and masturbated in front of a woman, but improperly admitted evidence that he had passed a girl and then turned around and followed her. Id. at 1195. The defendant had been charged with stalking and misdemeanor harassment. Id. at 1192. A division of this court held that the trial court's error was harmless because evidence of the defendant following a girl "was vastly overshadowed by evidence of defendant's more threatening acts." Id. at 1198.
¶ 44 Similarly, although evidence of Buell's theft from Kohl's was unfavorable to him, the evidence supporting his aggravated and attempted aggravated robbery charges "vastly overshadowed" it.
¶ 45 As well, Buell conceded that he had committed theft from Sears and Safeway. He disputed only whether he had used or threatened to use the knife before the thefts had been completed. But the Kohl's evidence did not involve a knife. So, it could not have influenced the jury's determination of the only contested issue.
¶ 46 Any error in admitting this evidence was harmless.
VII. Conclusion
¶ 47 The judgment is affirmed.
JUDGE WEBB and JUDGE LICHTENSTEIN concur.

Although the court's oral joinder order could be construed as consolidating the offenses both on the basis that they "constitut[ed] parts of a common scheme or plan" and on the basis that they were "of the same or similar character," on appeal, Buell argues only that the trial court erred in joining the offenses on the basis that they "constitut[ed] parts of a common scheme or plan." Crim. P. 8(a)(2).

Moreover, federal cases construing Fed. R. Crim. P. 8(a), which is substantively identical to Crim. P. 8(a)(2), do not support the holding in People v. Butson , 2017 COA 50, ¶ 14, 410 P.3d 744, that a CRE 404(b) analysis is required before consolidation based on the "same or similar character" language of Crim. P. 8(a)(2). For example, in United States v. Berg , 714 F.3d 490, 494-95 (7th Cir. 2013), the Seventh Circuit affirmed the trial court's consolidation of offenses under Fed. R. Crim. P. 8(a) based on their similar character. The Seventh Circuit did not address whether the offenses would have been admissible in separate trials in its Fed. R. Crim. P. 8(a) analysis. See also United States v. Thomas , 849 F.3d 906, 911 (10th Cir. 2017) ; Thomas v. United States , 849 F.3d 669, 675 (6th Cir. 2017).

We do not foreclose the possibility that a defendant may argue that he was prejudiced by the court's consolidation of cases, even when that consolidation was not an abuse of discretion under Crim. P. 8(a)(2). However, here, Buell does not argue that the consolidation prejudiced him for any reason other than that it "allowed the prosecution to paint Mr. Buell as a dangerous, incorrigible, repeat offender." This argument inheres in many joinders and, in our view, the Colorado Supreme Court subsumed this generic prejudice component in Crim. P. 8(a)(2), when consolidation is made under the "same or similar character" criterion.

We do not reach whether a CRE 404(b) analysis might be necessary on a motion to sever under Crim. P. 14 because Buell did not move to sever the cases and does not raise that argument on appeal. People v. Allen , 199 P.3d 33, 35 (Colo. App. 2007).