The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Eugene FOSTER, Defendant–Appellant.

No. 97CA1340.

Colorado Court of Appeals, Div. II.

Dec. 24, 1998.

Rehearing Denied Jan. 21, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John D. Seidel, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Ann M. Roan, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge CRISWELL.

Defendant, Eugene Foster, appeals the judgment entered upon a jury verdict finding him guilty of robbery, third degree assault, and theft. We affirm.

The evidence established that a security guard in a mall department store observed defendant, whom he recognized from previous contacts, as he walked to the bedding department of the store. There, defendant put two bed skirts in his jacket and exited the store. The guard, who had followed defendant to the bedding area and had observed his activities, followed him out of the store. ·

After defendant left the store, the guard called out to him several times, identifying himself as a loss prevention officer for the store. Defendant ignored the guard and ran into the parking lot towards a van. As defendant attempted to enter the passenger side of the van, the guard seized his jacket. Defendant then slammed the car door at least three times on the guard's hand, and the guard was forced to release him. The van then drove away.

Defendant was later charged with robbery of the security guard, conspiracy to commit robbery, third degree assault on the guard, and theft from the store. The conspiracy charge was dismissed prior to trial, and defendant was convicted on all remaining counts.

### I.

Defendant first contends that there was insufficient evidence to convict him of robbery because the prosecution failed to prove that he took the bed skirts from the "person or presence" of the security guard. Specifically, he argues that the guard did not have the right to exercise control over the merchandise, and therefore, there was insufficient evidence to support the conclusion that the bed skirts were taken from the guard's "presence." We disagree.

■ If the sufficiency of the evidence is challenged on appeal, our task is to determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. In doing so, we must give the prosecution the benefit of every reasonable inference which might fairly be drawn from the evidence and defer to the jury's resolution of conflicting evidence. *Kogan v. People*, 756 P.2d 945 (Colo.1988).

Under §18–4–301(1), C.R.S.1998, robbery occurs when:

> A person ... knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation....

■ In *People v. Bartowsheski*, 661 P.2d 235, 244 (Colo.1983), our supreme court held that property is taken from the "presence" of another when the property is "so within the victim's reach, inspection, or observation that he or she would be able to retain control over the property but for the force, threats, or intimidation directed by the perpetrator against the victim." To take property from someone's "presence," that person much be exercising, or have the right to exercise,

control over the article taken. *People v. Benton*, 829 P.2d 451 (Colo.App.1991).

In *People v. Ridenour*, 878 P.2d 23 (Colo. App.1994), a division of this court held that money taken from a theater office safe was not taken from the "presence" of the ticket taker because the evidence did not indicate that the ticket taker had access to the safe or could exercise control over its contents.

In contrast, here, sufficient evidence exists to support the jury's verdict. The victim here testified that, in his capacity as a security guard, or "loss prevention officer," he had the duty to deter shoplifting and to apprehend shoplifters. Further, he testified that he was authorized to contact an individual who has left the department store without paying for the store's property and to use limited force if that individual refuses to return to the store with the property.

■ Considering this evidence and all its reasonable inferences, we conclude that a reasonable juror could find beyond a reasonable doubt that the security guard, pursuant to his employment, was the custodian of the property and had a right to exercise control over it. *See People v. Estes*, 147 Cal.App.3d 23, 194 Cal.Rptr. 909 (1983) (department store security guard was a robbery victim where, as agent of the owner of the goods stolen, he was person directly responsible for the security of the items); *Johnson v. State*, 293 So.2d 71 (Fla.1974) (security guard is charged with the duty of protecting the store and its contents); *People v. Miller*, 18 Cal.3d 873, 135 Cal.Rptr. 654, 558 P.2d 552 (1977) (robbery conviction upheld on the grounds that security guard had constructive possession of the property); *see also Commonwealth v. Grassa*, 42 Mass.App. 204, 675 N.E.2d 799 (1997) (because police officer had "protective concern" for vehicle in parking lot, challenge to armed robbery conviction rejected).

We do not suggest, of course, that every act of shoplifting constitutes an act of robbery, even if there is a security guard on the premises. Here, however, reasonable jurors could find that the guard had authority to retrieve the articles from the defendant, that he took actions to effect such retrieval, that defendant used force to continue his unlawful

possession of those articles, and that, in doing so, defendant removed the articles from the "presence" of the guard. This evidence, in our view, was sufficient to support the robbery conviction. *See People v. Fox*, 928 P.2d 820 (Colo.App.1996).

## II.

Defendant next contends that the trial court erred by allowing the prosecutor to make three improper comments which diverted the jury's attention from the factual issues in the case. We are not persuaded.

As a preliminary matter, we note that defendant did not object to either of the first two comments challenged here. Accordingly, we review these statements under the plain error standard. *See People v. MacBlane*, 952 P.2d 824 (Colo.App.1997).

■ Under that standard, reversal is not warranted unless the incidents so affected the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment. *Walker v. People*, 932 P.2d 303 (Colo.1997). Hence, prosecutorial misconduct amounts to plain error only if there is a substantial likelihood that it affected the verdict or deprived the defendant of a fair and impartial trial. *People v. Constant*, 645 P.2d 843 (Colo.1982), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982).

■ Further, the determination whether a prosecutor's statements constitute inappropriate prosecutorial argument is an issue within the trial court's discretion. *Harris v. People*, 888 P.2d 259 (Colo.1995).

### A.

■ Defendant's first assertion relates to the prosecutor's characterization of the charge of third degree assault as "a lesser offense." Defendant claims that this characterization was made to distract the jury from its role as a fact-finder, rather than as a sentencer. However, defendant does not assert how his defense was harmed by this remark.

Further, a review of the remark in context reveals that the reference to third degree

assault as "one of the lesser offenses here," was followed by a list of objective facts that the jury had to find to convict defendant of that offense. This does not constitute plain error. *See United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (criminal conviction not to be lightly overturned on the basis of a prosecutor's comments standing alone; only by viewing the statements in context can it be determined whether the prosecutor's conduct affected the fairness of the trial).

Finally, the court instructed the jury that, if it found that the prosecution had proven a crime beyond a reasonable doubt, it would be the court's responsibility to decide defendant's punishment. The jury was further instructed not to consider what defendant's punishment might be. It is presumed that the jury followed the court's instructions. *See People v. Moody*, 676 P.2d 691 (Colo. 1984).

### B.

Next, defendant claims that the prosecution's following comment was improper:

> [T]he evidence that this prosecutor believes that you heard was that ... [the defendant] knew that if he was able to get that door closed that he'd get away with those bed skirts and he wouldn't get caught. That's the evidence that this prosecutor believes that you jurors heard.

This statement was made in response to defendant's argument that the jurors could infer from the evidence that defendant had no intention of exercising force against the security guard. Defendant asserts that this statement impermissibly injected the prosecutor's personal beliefs into the jury's deliberations.

■ In general, any statement of personal belief by counsel is improper. *See generally* I ABA, *Standards for Criminal Justice*, Standard 3–5.8(b) (2d ed.1980). The situation is most egregious when the ultimate guilt of the defendant is averred. *People v. Loscutoff*, 661 P.2d 274 (Colo.1983).

■ However, that is not what happened here. Instead, here, the prosecutor was re-sponding to defendant's argument with respect to the evidence that had been presented. By his statement, there was no implication that the prosecutor had access to information that the juror did not. Although it would have been better for the prosecutor to have refrained from such commentary, it does not rise to the level of plain error. *See People v. Loscutoff, supra.*

### C.

In defendant's final claim of prosecutorial misconduct, he argues that the prosecutor's comments denigrated and accused defense counsel of unethical conduct.

■ First, the prosecutor stated that defendant's argument that defendant did not know that a person with a right to possess the bed skirts was trying to recover them was "ridiculous." Defendant's objection to the prosecution's characterization of the defense as "ridiculous" was promptly sustained, and the jury was instructed to disregard the remark. Again, we presume that the jury followed the instruction, and we consider that instruction as having cured any prejudice arising from the remark. *See People v. Smith*, 685 P.2d 786 (Colo.App.1984).

The prosecutor then rephrased the statement to say:

> That is an argument without merit, ladies and gentlemen.... To say that he didn't know that somebody was trying to stop him to get that stuff back is without merit.

The trial court allowed this second statement over defendant's objection.

■ The prosecutor's statements, which were made in rebuttal argument, merely suggested that defendant's theory lacked credibility. We conclude that the statements cannot fairly be said to have been improper. *See People v. Vialpando*, 804 P.2d 219 (Colo. App.1990) (prosecutor is afforded wide latitude in replying to argument by opposing counsel); *People v. Brooks*, 950 P.2d 649 (Colo.App.1997) (counsel is entitled to argue all reasonable inferences from the facts in evidence and may comment on how well and in what manner a witness measures up to the tests of credibility set forth in the instructions).

Hence, we find no abuse of discretion in the trial court's ruling.

Moreover, we also conclude that the cumulative effect of all of these alleged errors does not require reversal. *See People v. Herr,* 868 P.2d 1121 (Colo.App.1993).

## III.

■ Defendant's final assignment of error is that the elemental instruction on robbery constituted a constructive amendment of the charging document, depriving him of his right to notice of the charge against him. Again, we disagree.

As alleged in Count I of the information, defendant was informed that he "did unlawfully, feloniously and knowingly take a thing of value, to-wit: Merchandise, from the person or presence of [the security guard] by the use of force, threats and intimidation...." And, the jury was informed that this was the charge.

The elemental jury instruction relating to Count I stated, in relevant part, as follows:

The elements of the crime of Robbery are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. took anything of value,

5. from the person or presence *of another,*

6. by the use of force, threats or intimidation.

(emphasis supplied) Defendant made no objection to the instruction.

Defendant now claims, however, that, because the jury instruction contained the phrase "of another," instead of the security guard's name, the information was constructively amended and, therefore, vacation of defendant's robbery conviction is mandated. Specifically, he argues that, because the elemental instruction did not identify the security guard as the person from whom the property was taken, the jury could have convicted defendant for the taking of the bed skirts from the person or presence of someone else.

Again, because no objection was made to the instruction at trial, we must review this contention under the plain error standard. *See People v. MacBlane, supra.*

■ A constructive amendment occurs when an essential element of the charged offense is changed, thereby altering the substance of the charging document. *People v. Rodriguez,* 914 P.2d 230 (Colo. 1996). A variance that broadens an indictment constitutes a constructive amendment and is reversible per se. *United States v. Wright,* 932 F.2d 868 (10th Cir.1991).

However, because the instruction did not name an additional or different victim, the variance between the charging document and the instruction did not, by itself, amount to an amendment of the information. *People v. Simmons,* —— P.2d —— (Colo.App. No. 96CA1011, Feb. 19, 1998) (1998 WL 69124).

■ Nevertheless, reversible error can be found if the instruction, considered together with the evidence presented, would allow the jurors to convict defendant of robbery without unanimously agreeing as to the identity of a particular victim. *See People v. Simmons, supra.*

In *Simmons,* a menacing case, there was a similar discrepancy between the charging document and the jury instruction which stated that the defendant could be convicted if the jury found that he "knowingly placed or attempted to place *another person* in fear of imminent serious bodily injury." (emphasis added) However, in that case, the evidence established that two persons could have been possible victims. Moreover, the prosecutor, in closing arguments, argued that both victims were placed in fear of imminent serious bodily injury. As a result, a division of this court reversed defendant's conviction because the instruction, which did not specify a particular victim, in combination with the prosecutor's comments, invited the jury to convict without regard to the identity of the victim.

Here, in contrast, no evidence was presented regarding another victim. The security guard and a deputy sheriff were the only witnesses to testify at trial. No evidence was presented during the deputy sheriff's

testimony from which the jury could infer that the deputy sheriff was a victim of the robbery. Further, defendant does not point to any statements made during either opening or closing arguments from which the jury could infer that the taking could have been from the person or presence of another victim.

While defendant argues, on appeal, that the jury could have found that the department store was the victim of the robbery, we conclude that no reasonable juror would assume that such a store was either a "person" or had a "presence." And, this is particularly true here in light of the reference to "he or she" in the instruction defining "presence of another."

The gravamen of the crime of robbery is the application of physical force or intimidation at any time during the course of events that culminates in the taking of property from a victim's person or presence. *People v. Bartowsheski, supra.* The only force testified to here was that applied to the security guard by defendant as he tried to close the van door.

Finally, the jury instructions contained no references to any other potential victim. In fact, one instruction specifically states that defendant contends that he did not rob the security guard.

Hence, because there is no basis for defendant to contend that the jury's verdict was not unanimous with respect to the identity of the victim, we conclude that no error, much less plain error, occurred.

The judgment is affirmed.

CASEBOLT and VOGT, JJ., concur.