23CA1209 Peo v Naranjo 07-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1209
El Paso County District Court No. 21CR3610
Honorable Chad Miller, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kenneth William Naranjo,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE WELLING
Taubman* and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

---

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Keyonyu X O'Connell, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendant, Kenneth William Naranjo, appeals his convictions for first degree murder (extreme indifference) and attempted first degree murder (extreme indifference).  He argues that the trial court didn't properly instruct the jury about which charge applied to which victim or the law of self-defense.  We affirm.

## I.    Background

¶ 2    The following facts are supported by testimony elicited at trial. Early in the morning on June 26, 2021, D.M. and J.V. pulled into a hotel in Colorado Springs.  In the parking lot, both D.M. and J.V. recognized a woman in a car — Selena Ramirez.  They asked her if she was okay.  Ramirez replied that she was fine.  She exited her vehicle to talk with D.M. and J.V.  D.M. asked Ramirez if she was "working," and she said no.  Suddenly, another man — Ramirez's boyfriend, Naranjo — approached the vehicle, put a gun to D.M.'s head, and confronted him about why he had been talking to Ramirez.  D.M. pleaded with Naranjo to lower the gun, which he eventually did.  Ramirez pushed Naranjo and asked him to stop his threatening of D.M.  As Naranjo walked away, J.V. began yelling at Naranjo for pointing the gun at D.M.'s head.  Naranjo turned around, pulled his gun, and fired all the bullets in the gun at the

1

vehicle, where D.M. and J.V. were still sitting. J.V. was struck in the shoulder. D.M. sped away and drove to the front of the hotel, where he called the police. Police rendered CPR to J.V., but she died.

¶ 3    Four days later, on June 30, Naranjo was arrested. The People charged Naranjo with first degree murder (extreme indifference) and second degree murder, as to J.V., and attempted first degree murder (extreme indifference) and attempted second degree murder, as to D.M.[1]

¶ 4    The case proceeded to trial, and at trial Naranjo argued that he had acted in self-defense. At the close of trial, the jury was instructed regarding the four charged offenses, as well as two lesser included offenses — manslaughter and criminally negligent homicide. None of the elemental jury instructions or verdict forms

---

[1] Naranjo was also charged with two counts of distribution of a controlled substance, five counts of possession of a weapon by a previous offender (POWPO), five habitual criminal sentence enhancers, and one special offender count. Before trial, the prosecution dismissed the controlled substance counts, and the court bifurcated the POWPO, habitual criminal, and special offender counts. After the jury returned its guilty verdict on the homicide and attempted homicide charges, the prosecution dismissed the remaining charges.

specified the victims of each charge. Naranjo, however, didn't object to any of the jury instructions or verdict forms. The jury convicted Naranjo of first degree murder, manslaughter, and first and second degree attempted murder. The court merged the manslaughter conviction into the first degree murder conviction and the second degree attempted murder conviction into the attempted first degree murder conviction. The court sentenced Naranjo to life without the possibility of parole for the murder conviction and forty-eight years for the attempted murder conviction and ordered the sentences to run consecutively.

## II.    Issues on Appeal

¶ 5    Naranjo argues on appeal that the trial court plainly erred by not identifying in the jury instructions the victim for each charge. He also argues that the trial court erred by not properly instructing the jury that self-defense negated the mens rea for the lesser included offenses of manslaughter and criminally negligent homicide and that the court included language in the jury instructions that invited the jury to question whether Naranjo needed to retreat before using deadly force. We consider and reject each contention in turn.

## A. Preservation and Standard of Review

¶ 6    "We review jury instructions de novo to determine whether they accurately inform the jury of the governing law." *McDonald v. People*, 2021 CO 64, ¶ 54 (quoting *Hoggard v. People*, 2020 CO 54, ¶ 12).

¶ 7    Because Naranjo didn't object at trial to any of the issues he raises on appeal, they aren't preserved, and we review his contentions for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14. Plain error is error that is obvious and substantial. *People v. Torrez*, 2024 COA 11, ¶ 41. An error is obvious if the trial judge should have been able to avoid the error without the benefit of an objection. *Id.* To be obvious, the alleged error "must contravene (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law." *Id.* (quoting *Cardman v. People*, 2019 CO 73, ¶ 34). An error is substantial if it "so undermine[s] the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Id.* (quoting *Hagos*, ¶ 14).

## B. Specificity as to the Victims

### 1. Additional Facts

¶ 8 From the opening statement through the close of evidence, the trial focused on the alleged homicide of J.V. and the attempted homicide of D.M. The alleged criminal act that was the focus of the trial was Naranjo shooting into the Jeep on June 26, 2021. Naranjo didn't testify at trial, but all three eyewitnesses testified that D.M. and J.V. were the only people in the Jeep when Naranjo shot at them. Ramirez testified that Naranjo was only four feet from the vehicle when he shot at D.M. and J.V.

¶ 9 During closing arguments, the prosecution made clear which charges related to which victim.

> Members of the jury, we're going to ask you when you go back in to deliberate that you find Kenneth Naranjo guilty of murder in the first degree and of murder in the second degree, with the victim being [J.V.]
>
> We're also going to ask that you find Kenneth Naranjo guilty of attempted murder in the first degree and attempted murder in the second degree with the victim [D.M.]

¶ 10 Jury Instruction Nos. 16 through 19 and 22 set forth the elements of each of the charged offenses and lesser included offenses. None of those instructions, however, included the names

of the victims.  Naranjo didn't object to any of the jury instructions at trial.

## 2.  Analysis

¶ 11    Naranjo argues that the omission of a specific victim from the elemental jury instructions and verdict forms constitutes reversible error, since it meant the jury's verdict might not have been unanimous as to the identity of the victim for each count.  We aren't persuaded that the court plainly erred.

¶ 12    Even if we assume that it was error for the court to omit the identity of the victim corresponding to each charge, that omission in this case — when there was no ambiguity as to which charge related to which victim — doesn't undermine our confidence in the verdict.  First, all the eyewitnesses testified that Naranjo fired at the Jeep and that the only people in the Jeep at the time of the shooting were D.M. and J.V.  So the evidence unambiguously established that they were the only two victims.

¶ 13    Second, based on the nature of the charges it was clear which victim was associated with which crime, as one victim was deceased, and the other wasn't.  Indeed, from the beginning of the trial, both the prosecution and the defense made it clear that only

one victim — J.V. — died, and that the only other victim — D.M. — survived. Because there were two corresponding categories of murder charges against Naranjo — homicide and attempted homicide — there's no chance that the jury was confused regarding which victim was associated with which charges.

¶ 14     Third, the parties' closing arguments unambiguously related each charge to its associated victim. Given all of this, we can't say that the court's failure to include the names of the victims on Jury Instruction Nos. 16 through 19 and 22 causes us to doubt, much less seriously doubt, the fairness of the trial or the reliability of the jury's verdict.

¶ 15     Naranjo's reliance on *People v. Simmons*, 973 P.2d 627 (Colo. App. 1998), and *People v. Foster*, 971 P.2d 1082 (Colo. App. 1998), *overruled on other grounds by Bock v. People*, 2024 CO 61, doesn't persuade us otherwise, as the facts in *Simmons* are readily distinguishable and the division's analysis in *Foster* supports our conclusion.

¶ 16     *Simmons* is distinguishable because the evidence there was ambiguous regarding the identity of the victim. In *Simmons*, the defendant drove to his sister's home while intoxicated. 973 P.2d at

7

628. He was armed with a knife and was brandishing it. *Id.* So his mother — fearful that he would attack his sister's boyfriend — grabbed Simmons, and the boyfriend disarmed him. *Id.* Simmons was charged with felony menacing, and the charging document listed the boyfriend as the victim. *Id.* But at trial, the boyfriend testified that he believed Simmons intended to harm his mother with the knife, and Simmon's mother testified she believed he was going to harm the boyfriend with the knife. *Id.* Simmons testified that he was only going to harm himself. *Id.* The jury was instructed that, if it found Simmons had knowingly placed another person in fear of serious bodily injury, it could find him guilty of felony menacing. *Id.* Additionally, during their closing argument, the prosecutor argued that it didn't matter whether the "[]other person" was the boyfriend, Simmons' mother, or even Simmons himself. *Id.* at 629. On appeal, Simmons argued that the discrepancy between the charging document and the jury instruction, in tandem with the comments the prosecutor made during their closing argument, required reversal. *Id.*

¶ 17    The *Simmons* division agreed and reasoned that it was impossible to determine whether the jury convicted Simmons for

8

menacing his mother or his sister's boyfriend. *Id.* at 630. The division also found that the prosecutor's comments during closing argument invited the jury to convict Simmons "without regard to the identity of the victim" and that "[t]he prosecutor's additional improper suggestion that the jury could even premise a guilt finding on [Simmons'] possible injury to *himself* compounded the potential jury confusion." *Id.*

¶ 18 And *Foster* doesn't support Naranjo's argument for reversal. In *Foster*, the defendant robbed a bedding store, and, as he fled the store, a security guard pursued him. 971 P.2d at 1084. The security guard briefly caught Foster as he entered a van waiting for him in the parking lot. *Id.* Foster smashed the security guard's hand with the van door at least three times, forcing the security guard to release him. *Id.* At trial, Foster was charged with robbery, which requires that a person knowingly take anything of value "from the person or presence of another by the use of force, threats, or intimidation." *Id.*

¶ 19 On appeal, Foster argued that because the elemental instruction for robbery tracked the language quoted above, including "of another" — and not the security guard's name — that

9

members of the jury might have concluded that Foster stole merchandise from the person or presence of a second, different person other than the security officer. *Id.* The *Foster* division concluded that, since no evidence was provided about another victim and no other evidence could have confused the jury as to the identity of the victim, the lack of a named victim on the elemental jury instruction wasn't error. *Id.* at 1087-88.

¶ 20    This case is like *Foster*. True, the elemental instructions for the charges didn't include the victims' names. But there was no reasonable possibility that the jury was confused. Certainly, none of the circumstances that troubled the division in *Simmons* are present here. The prosecutor didn't make any statements that could have confused the jury. Indeed, the prosecutor correctly explained to the jury which charges corresponded to which victim. And unlike in *Simmons*, when the mother and boyfriend both could have been victims of the charge of menacing — here, there was only one possible victim for each charge because there was only one victim who survived the shooting, D.M., and only one victim who died during the shooting, J.V. And both the prosecution and the defense made that clear from the outset of the trial. Accordingly,

any error in omitting the victims' names from the jury instructions wasn't plain.

## C.    Self-Defense

¶ 21    Naranjo next argues that the court erred in two ways regarding its instructions on self-defense.  First, he contends that the court included language in the jury instruction on self-defense that caused the jury to question whether Naranjo should have retreated before using deadly force to defend himself.  He argues that this unnecessary language — together with comments defense counsel made during closing argument — may have confused the jury.  Second, he argues that reversal is required because the instructions didn't inform the jury that self-defense negated the mens rea for the lesser included offenses of manslaughter and criminally negligent homicide.  We aren't persuaded by either contention.

### 1.    Duty to Retreat

¶ 22    Jury Instruction No. 20 provided, in relevant part, that "the defendant was legally authorized to use deadly physical force upon another person *without first retreating* if" five conditions were satisfied.  (Emphasis added.)  Jury Instruction No. 20, which the

11

court gave without objection, tracked the model instruction for use of deadly physical force in defense of a person.  *See* COLJI-Crim. H:12 (2024).

¶ 23     Without explicitly contending that the instruction the court gave was improper or misstated the law, Naranjo argues that the inclusion of the language "without first retreating" in Jury Instruction No. 20 may have caused the jury to question whether Naranjo had a duty to retreat before using deadly physical force.  As evidence of this, he points to an argument that defense counsel made during closing.  Specifically, defense counsel argued that D.M. was the initial aggressor because he verbally threatened Naranjo before saying that Naranjo had a choice to make:

> So the words that [D.M.] used gave [Naranjo] two options: Option Number [one] was to walk away, and Option Number [two] was to defend himself and [Ramirez].

¶ 24     Naranjo argues that the language of the instruction might have caused the jury to question whether Naranjo was legally required to choose option one.  We conclude, however, that the court didn't err, much less plainly err.

¶ 25    The court's instruction properly stated the law regarding duty to retreat, *see, e.g.*, *People v. Martinez*, 224 P.3d 1026, 1032-33 (Colo. App. 2009), *aff'd on other grounds*, 244 P.3d 135 (Colo. 2010), and Naranjo doesn't contend otherwise.  To the extent that defense counsel's argument may have improperly implied that there was a duty to retreat, the court's instruction remedied any confusion.  *See Cassels v. People*, 92 P.3d 951, 956 (Colo. 2004) ("A trial court's *failure to instruct the jury on the doctrine of no-retreat* in cases where the defendant was not the initial aggressor creates a risk that the jury will not acquit the defendant because it will consider the defendant's use of force unreasonable in light of the possibility of retreat." (citing *People v. Toler*, 9 P.3d 341, 352 (Colo. 2000))) (emphasis added).  In any event, defense counsel's possible injection of confusion surrounding the duty to retreat can't be a basis for reversal.  *See People v. Rediger*, 2018 CO 32, ¶ 34 (discussing invited error).  Simply put, we discern no error — plain or otherwise — in the court's decision to instruct the jury on the duty to retreat.

## 2. Self-Defense and the Lesser Included Offenses

¶ 26    Second, Naranjo argues that the court erred by not instructing the jury that self-defense negated the mens rea for the lesser included offenses of manslaughter and criminally negligent homicide.  He argues that the jury instructions only informed the jury that self-defense negated extreme indifference but not recklessness or criminal negligence — the mens rea for manslaughter and criminally negligent homicide.  But because the alleged error only relates to offenses that either Naranjo wasn't convicted of or that merged at sentencing, any error was harmless beyond a reasonable doubt.

¶ 27    The only offense on which the jury returned a guilty verdict that was implicated by this purported error is manslaughter.  This is so because the jury didn't convict Naranjo of criminally negligent homicide, and Naranjo doesn't contend that this alleged error implicated the jury's consideration of self-defense as it related to any of the murder or attempted murder charges.

¶ 28    But the manslaughter conviction merged into the first degree murder conviction, so there's no possibility that Naranjo was prejudiced by this alleged error.  *See Thomas v. People*, 2021 CO 84,

¶ 3 (when convictions merge, there is only one conviction); *cf. People v. Rhea*, 2014 COA 60, ¶ 30 (double jeopardy concerns cured by merger of charges at sentencing). Accordingly, we discern no basis for reversal. *See* Crim. P. 52(a) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.").

## III. Disposition

¶ 29 Accordingly, we affirm Naranjo's judgment of conviction.

JUDGE TAUBMAN and JUDGE BERGER concur.